TEXAS BREWING COMPANY v. R. B. AND WARD TEMPLEMAN ET AL.

Decided December 3, 1896.

90 277
90 301
90 565

1. Trusts—Agreement in Restraint of Trade.

   A contract between a brewing company and a dealer, by which the former furnishes a delivery wagon and erects a storage vault, on premises furnished by the latter, for handling the company's beer, and agrees to sell its beer in that locality only to the latter, and at a fixed price, while the dealer agrees to use his efforts in the interest of the brewing company, and to handle no other beer without such company's consent (the contract providing for sale of the beer by the company to the dealer, and settlement therefor by the latter by acceptances, from time to time, for the amount of the agreed price) is an agreement having the effect to create and "carry out restrictions in trade," and "to prevent competition" in the "sale and purchase of commodities," and, as such, is made void by the provisions of the statute prohibiting trusts (Act of March 30, 1889).  Mfg. Co. v. Peake, 89 Texas, 209, distinguished.  (Pp. 279 to 281.)

2. Supreme Court—Jurisdiction—Fundamental Error.

   Whether the Supreme Court has the power, possessed by the Courts of Civil Appeals, and by this court as formerly constituted, to reverse a case for a fundamental error, not assigned,—questioned.  (P. 281.)

3. Same.

   Where, in a case reversed and remanded by the Court of Civil Appeals, the Supreme Court obtains jurisdiction on the ground that the ruling practically settles the case, and finds the judgment of reversal correct, because of fundamental error, not assigned nor passed on by the Appellate Court, its duty to render such judgment as should have been entered by the Appellate Court requires it to reverse the judgment of the trial court upon such fundamental error and to render final judgment in the case.  (P. 281.)

ERROR to Court of Civil Appeals for Fourth District, in an appeal from Tarrant County.

The suit was brought by the Texas Brewing Company against Norwood & Co. as principals, and R. B. and Ward Templeman as their sureties. Plaintiff recovered judgment, and the sureties only appealed. The judgment was reversed by the Court of Civil Appeals, and plaintiff obtained a writ of error upon a petition showing that the ruling practically settled the case

*W. R. Sawyers,* for plaintiff in error.

*H. H. Boone* and *N. A. Stedman,* for defendants in error.

GAINES, CHIEF JUSTICE.—This suit was brought by the plaintiff in error against W. N. Norwood and Company, as principals, and against the defendants in error, as sureties, to recover a balance due from the principals for beer and ice sold. The plaintiff in error recovered a judgment in the District Court against all the defendants; and, the sureties having appealed, the judgment was reversed as to them and the cause remanded. We acquired jurisdiction to grant the writ by the allegation and showing in the petition that the judgment of the Court of Civil Appeals practically settled the case.

We are of the opinion that the Appellate Court correctly reversed the judgment, and, also, that it might have gone further and rendered it for the appellants, on account of fundamental error in the proceedings.

The beer and ice were sold by plaintiff in error to Norwood and Co. under a written contract, of which the following is a copy:

"The State of Texas, ⎱
        "County of Tarrant. ⎰

"This agreement, entered into between the Texas Brewing Company,. a corporation duly incorporated under the laws of the State of Texas, and W. N. Norwood and Co., a firm composed of W. N. Norwood Sr. and H. Norwood, of Navasota, Grimes County, Texas, witnesseth: For and in consideration of the things to be done and the moneys to be paid as hereinafter set forth, the Texas Brewing Company agrees to give to W. N. Norwood and Co. the sole representation and sale of their products. in the town of Navasota and vicinity, and further agrees to furnish to said W. N. Norwood and Co. a storage vault of sufficient size, to be built. upon the premises of the said W. N. Norwood and Co., now occupied by them at Navasota, Texas, and also a suitable wagon for delivery purposes, the wagon to remain the property of the Texas Brewing Company;. and the Texas Brewing Company to have ninety days (90 days) after the revocation or cancellation of this contract within which to remove from the premises of said W. N. Norwood and Co. any improvements which they have erected thereon. The Texas Brewing Company agrees further

to furnish beer and ice on the following prices, in car load lots, at Navasota:   Keg, eight dollars ($8.00) per barrel;  bottle beer, $8.50 and $9.00 (Eight & 50-100 dollars and Nine dollars) per cask, quarts and pints respectively;  Ice at $6.50 (Six & 50-100 dollars) per ton, from the 1st day of April to the first day of October, and at Four & 50-100 dollars ($4.50) per ton from the first day of October until the 1st day of April;  and in the case of ice, track weights at Fort Worth to govern.

"On their part, the said W. N. Norwood and Co. agree:

"Firstly:   To furnish a suitable place for the erection of a vault, free of any rental charges.

"Secondly:   To use their best endeavors in the interest of the Texas Brewing Company.

"Thirdly:   During the term of this contract to handle no other beer than that of the Texas Brewing Company, except with the expressed written permission of the said Texas Brewing Company.

"Fourthly:   To pay for the merchandise sold them with acceptances with each and every invoice.   Ice fifteen days from date of shipment;  beer thirty days from date of shipment.

"For the satisfactory performance and to secure the ultimate payment of the merchandise sold them, or of the acceptances given therefor, the said W. N. Norwood and Co. further agrees to give a good and sufficient bond, with not less than two sureties, in the sum of twenty-five hundred dollars ($2500.00), to which bond reference is had, and it is made part and parcel of this contract.

"Any suit arising out of the non-performance of anything to be done under this contract by Norwood and Co. may be brought in the courts of Tarrant County, Texas;  and all moneys payable thereunder is payable at Fort Worth, Texas.

"Dated this 6th day of March, 1893."

At the same time Norwood and Co., as principals, and defendants in error, as sureties, executed a bond in the penal sum of $2500, payable to the Brewing Company, in which they bound themselves to pay the in-indebtedness which might accrue under the foregoing contract.

The contract, unlike that construed by this court in the case of the Milburn Manufacturing Company v. Peak, 89 Texas, 209 (34 S. W. Rep., 102), is in its essence a contract for the sale of beer and ice by the Brewing Company to Norwood and Co., and does not, like the latter, establish a mere agency.   The Brewing Company is to furnish the beer and ice at certain stipulated prices, and Norwood and Co. are "to pay for the merchandise sold them with acceptances with each and every invoice." Upon the delivery of the beer and ice the title passed, and the Brewing Company was absolutely entitled to the price, with its right secured by the bond of the defendants in error.   If there was any doubt upon this point, it is set at rest by the original petition in the case.   The plaintiff shows by its allegations that it sues to recover the price of goods sold.

The contract of the principals was clearly prohibited by the Act of

March 30, 1889, entitled "An Act to define trusts, and to provide for penalties and punishment of corporations, persons, firms, and associations of persons connected with them, and to promote free competition in the State of Texas." The first section of the act reads as follows: "A trust is a combination of capital, skill, or acts, by two or more persons, firms, corporations, or associations of persons, or of either two or more of them, for either, any, or all of the following purposes: First—To create or carry out restrictions in trade. Second—To limit or reduce the production, or increase or reduce the price of merchandise or commodities. Third—To prevent competition in manufacture, making, transportation, sale, or purchase of merchandise, produce, or commodities Fourth—To fix at any standard or figure, whereby its price to the public shall be in any manner controlled or established, any article or commodity of merchandise, produce, or commerce intended for sale, use, or consumption in this State. Fifth—To make or enter into, or execute or carry out any contract, obligation, or agreement of any kind or description, by which they shall bind or have bound themselves not to sell, dispose of, or transport any article or commodity, or article of trade, use, merchandise, commerce, or consumption, below a common standard figure; or by which they shall agree in any manner to keep the price of such article, commodity, or transportation at a fixed or graduated figure; or by which they shall in any manner establish or settle the price of any article, or commodity, or transportation, between them or themselves and others, to preclude a free and unrestricted competition among themselves or others in the sale or transportation of any such article or commodity; or by which they shall agree to pool, combine, or unite any interest they may have in connection with the sale or transportation of any such article or commodity that its price might in any manner be affected." We have heretofore held that this law is not in violation of the Constitution. (Houck and Dieter v. Brewing Ass'n., 88 Texas, 184.) The contract, we think, is a combination of capital, skill and acts. As a basis for the transactions which were to be effected in pursuance of its provisions, the Brewing Company agreed to supply a storage vault and a wagon, which were to remain its property, and Norwood and Co. agreed to furnish a suitable place, free of rent, for the erection of the vault, and to use their best endeavors in the interest of the Brewing Company—that is to say, to do all reasonably within their power to promote the sale of the beer. Here is a union of the capital of both parties and a union of the skill of one of them. The contract itself and what was done under it are acts of combination. Was the combination unlawful? By the agreement the Brewing Company bound itself to give to Norwood and Co. the sole representation and sale of its products in and near the town of Navasota, and the latter placed themselves under the reciprocal obligation to sell no other beer than that of the company. The effect of the contract is evidently to create and "carry out restrictions in trade" and "to prevent competition" in the "sale and purchase" of "commodities"—namely, beer and ice. Clearly the act in question forbids such agreements. The

statute denounces penalties for the violation of its provision and expressly declares "that any contract or agreement in violation of the provisions of this act shall be absolutely void and not enforceable either in law or equity."

There is no question of interstate commerce involved in the case; and it is therefore apparent that the contract cannot be the foundation of a proper judgment.

But the inquiry arises, have we jurisdiction of the question and can we decide the case upon the ground of the illegality of contract? The error was not assigned in the Court of Civil Appeals, nor has it been assigned here. Since the appellants in that court are the defendants in this, they could only specify the error in this court by cross-assignment. Whether we have the power to reverse a judgment for a fundamental error not assigned is a question which has presented itself in this court, but it is one which we have never found it necessary to decide. Nor do we find a determination of the point essential to a disposition of this case. The Court of Civil Appeals may reverse for error apparent on the face of the record, though not assigned. Rev. Stats., 1895, article 1014. This court, when it exercised jurisdiction over appeals in the first instance, had the same power, and frequently, without a specification of the point, reversed for fundamental error. (Harris v. Petty, 66 Texas, 516.) In Rankert v. Clow, 16 Texas, 9, the court say: "It is too well settled to admit of question, that objections to a judgment, which go to the merits and foundation of the action, will be considered, though not assigned as error; and that a judgment cannot be permitted to stand, which, upon the plaintiff's case, as presented by his petition, appears not to be well founded in justice and in law."

In this case the Court of Civil Appeals reversed the judgment of the District Court and remanded the cause. The appellee, as plaintiff in error in this court, seeks to reverse the judgment rendered upon appeal, and, in order to do so, must show that it is erroneous. In other words, it must be made to appear that the Appellate Court should have affirmed the judgment of the District Court. But if there was fundamental error in the latter judgment apparent upon the face of the record, it should have been reversed by that court, whether or not that or other errors were assigned. The judgment of reversal is correct, and therefore must stand, although the ruling of the court may have been placed upon the wrong ground. The Court of Civil Appeals ought, in our opinion, to have rendered judgment for the appellants—thereby settling the case. Since this court has acquired jurisdiction on the ground that the judgment of reversal practically settled the case, and since we find no error in the latter judgment, it is our duty under the statute to render judgment for the defendant in error.

Our ruling upon the points discussed in this opinion is decisive of the litigation, and we need not pass upon the other questions presented in the petition for the writ of error.

The judgment of the Court of Civil Appeals reversing the judgment of the District Court is affirmed and judgment is here rendered for the defendants in error.

*Affirmed and judgment rendered.*