J. R. WATKINS MEDICAL CO. v. JOHNSON et al.

(Court of Civil Appeals of Texas. San Antonio. Nov. 26, 1913. Rehearing Denied Jan. 7, 1914.)

1. MONOPOLIES (§ 17*) — CONTRACTS — RESTRAINT OF TRADE.

A contract to purchase patent medicines from plaintiff at wholesale to be sold at the regular retail prices in a certain part of the county except within cities, which also provided that the buyer would sell no other goods during the term of contract except those procured from plaintiff and would sell them only to customers at their residences in the district prescribed, violated the Anti-Trust Act (Rev. Civ. St. 1911, arts. 7796, 7798); being an attempt to combine the capital, skill, etc., of the parties to maintain a standard of prices and prevent competition in the territory fixed.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 13; Dec. Dig. § 17.*]

2. COMMERCE (§ 40*) — "INTERSTATE COMMERCE."

The sale of goods by a citizen of one state to a citizen of another state which are to be shipped from one to the other is "interstate commerce," though the sale is made by the seller's agent in the buyer's state; "interstate commerce" consisting of intercourse or traffic between citizens of different states.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 29, 30; Dec. Dig. § 40.*

For other definitions, see Words and Phrases, vol. 4, pp. 3724–3731.]

3. COMMERCE (§ 57*) — ANTI-TRUST ACT—INTERSTATE COMMERCE.

The fact that the sale of goods by a citizen of another state to a citizen of Texas under a contract which violated the Anti-Trust Act (Rev. Civ. St. 1911, arts. 7796, 7798) also constituted interstate commerce would not prevent the Anti-Trust Act from applying to invalidate the contract and prevent a recovery thereon.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 72–76, 88, 90, 92–102; Dec. Dig. § 57.*]

4. MONOPOLIES (§ 21*) — CONTRACT—INVALIDITY.

The fact that a part of the account between the parties was due, and stated when a contract was made between them which was invalid under the Anti-Trust Act (Rev. Civ. St. 1911, arts. 7796, 7798), and which stipulates for the payment of the account stated, would not save such part of the contract from being illegal and unenforceable so as to permit recovery of such amount; all items of the illegal contract being invalid.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 15; Dec. Dig. § 21.*]

Appeal from District Court, De Witt County; John M. Green, Judge.

Action by the J. R. Watkins Medical Company against W. E. Johnson and others. From a judgment dismissing the action, plaintiff appeals. Affirmed.

Sam C. Lackey, of Cuero, and Tawney, Smith & Tawney, of Winona, Minn., and McFarland & Lewright, of San Antonio, for appellant. Davidson & Bailey and R. J. Waldeck, all of Cuero, for appellees.

TALIAFERRO, J. This suit was brought by the J. R. Watkins Medical Company, a private corporation, in the district court of De Witt county, Tex., against W. E. Johnson, as principal debtor, and William Thomas, Chas. G. Breeden, J. K. Irwin, and William Lienhard, as sureties, for a balance due and owing for medicines, extracts, etc., furnished by plaintiff to defendant Johnson

on a written contract between plaintiff and all of the defendants, by the terms of which said Thomas, Breeden, Irwin, and Lienhard, agreed to guarantee payment to plaintiff for said goods. Defendants Thomas, Breeden, Irwin, and Lienhard filed a general demurrer and special exceptions, by which they insist that said contract is illegal and unenforceable because violative of the anti-trust laws of Texas. These demurrers were sustained, and the plaintiff refused to amend its petition, whereupon the cause was dismissed by the court.

By the contract, stripped of its verbiage, appellant agreed to furnish and deliver to Johnson, f. o. b. the cars at Winona, Minn., its medicines at the usual wholesale prices, less certain discounts, to be sold by him at the regular retail prices in that part of De Witt county, Tex., lying west of the Guadalupe river, except in incorporated municipalities. It was agreed by Johnson that he would sell no other goods or articles during the term of the contract except those purchased by him from appellant, and he was to sell them only to customers at their residences in the prescribed district. Johnson agreed to make weekly reports of sales made by him and to pay for the goods so furnished him at such weekly periods or in cash within ten days from date of invoice, in which latter event he was to be allowed a discount. Any goods unsold by Johnson appellant agreed to take back, f. o. b. cars at Winona, if tendered in as good condition as when shipped. It was further provided that Johnson should have no right to incur any "debt, obligation or liability of any kind" on account of appellant, and that appellant should in no wise share in the expenses or profit of Johnson's ventures, and that in event of Johnson's default in any of the terms of the contract appellant could terminate same at once by giving written notice by mail.

The following clause is inserted into the contract: "The party of the second part (Johnson) hereby promises and agrees to pay to said company, at Winona, Minnesota, during the term of this agreement, payment of which is hereby extended by said company (appellant) to such time, the amount due it for medicines, extracts and other articles, sold and delivered to him under a former agreement."

Appended to the contract is the following agreement signed by the appellees:

"In consideration of the execution and delivery of the foregoing agreement by the J. R. Watkins Medical Company, and the sale and delivery by it to the party of the second part, of its medicines, extracts and other articles, and the extension of the time of payment of the amount due from him to said company, as therein provided, we, the undersigned, jointly and severally guarantee full and complete payment of each and all of the same, at the time and place and in the manner in said agreement provided.

W. Thomas,　　　　Stockman, Cuero, Texas.
Chas. G. Breeden, Merchant, Cuero, Texas.
J. K. Irwin,　　　Farmer,　 Cuero, Texas.
Wm. Lienhard,　　 Farmer,　 Cuero, Texas."

It is not contended by appellants that this was a contract of agency, and we will not discuss that aspect of the case, but treat it as a contract for the sale of goods.

The first proposition under appellant's first assignment of error is as follows: "The contract between plaintiff and defendants, as fully described in the petition, constituted and was a part of interstate commerce, for which reason the anti-trust laws of the state of Texas had no application thereto."

The second proposition is as follows: "The contract sued upon by plaintiff, and involved herein, did not violate the laws of the United States, regulating interstate commerce, more especially that which is commonly known as the Sherman Anti-Trust Law."

In considering these propositions, we must proceed upon the theory that but one question is to be considered; that is, whether the court a quo had jurisdiction to render the judgment herein. This for the reason that we decide, in the first place, that the contract in question is violative of the anti-trust laws of Texas, and, in the second place, that the sale of the goods by the appellant to Johnson was interstate commerce.

[1] The contract is violative of title 130, c. 1, arts. 7796 and 7798, R. S. 1911, it clearly showing by its terms an intention to combine the capital, skill, and acts of the parties to fix and maintain a standard of prices upon a certain commodity and to prevent competition in a given territory. Fuqua v. Pabst Brewing Co., 90 Tex. 298, 38 S. W. 29, 750, 35 L. R. A. 241; T. & P. Coal Co. v. Lawson, 89 Tex. 394, 32 S. W. 871, 34 S. W. 919; Texas Brewing Co. v. Templeman, 90 Tex. 277, 38 S. W. 27.

[2] That the sale of the goods by appellant to appellee was interstate commerce cannot be doubted. "Interstate commerce" consists of intercourse or traffic between citizens of different states. Barnhard Bros. v. Morrison, 87 S. W. 376; Houston & Galveston Navigation Co. v. Dwyer, 29 Tex. 376. And the sale of goods by a citizen in one state to a citizen in another state, the goods to be shipped from one to the other, is "interstate commerce," even when the sale is made by an agent of the seller in the state of the buyer. Bateman v. Milling Co., 1 Tex. Civ. App. 90, 20 S. W. 931; McCall v. Stiff, 142 S. W. 659.

[3] Does it follow from these conclusions that the contract between the parties to this suit falls only under the interstate commerce regulations, and that it is not governed by the anti-trust laws of the state of Texas? We recognize the difficulty of this question and enter upon its discussion with some diffidence. There are two lines of decisions in

this state which seem to create a conflict upon the question which we have been unable fully to reconcile. The leading case, of Fuqua v. Pabst Brewing Association, seems to us to be the most sound and well considered of the decisions upon the subject, and we believe that most of the cases are entirely consistent with the doctrine as there announced by Mr. Justice Denman. That was a case very similar in its nature to the one before us. The brewing company had shipped quantities of beer to appellant under a contract similar in many respects to the one in this case. Suit was filed upon an account accrued under the contract, against the sureties of the purchasers. The trial court gave judgment upon the account which was affirmed by the Court of Civil Appeals. The question of the validity of the contract under the anti-trust statutes of Texas was not raised until the petition for writ of error was presented to the Supreme Court. Yet the Supreme Court considered the question and passed upon it as fundamental and determinative of the whole case. In disposing of the case, the court said: "In the celebrated 'Original Package Case' of Leisy v. Hardin, 135 U. S. 100 [10 Sup. Ct. 681, 34 L. Ed. 128], the Supreme Court of the United States held that beer, imported by a resident of one state into another for sale, retained its character as an article of interstate commerce, exempt from regulation by the statutes of such other state, until disposed of by such nonresident importer in such other state in the original packages in which it was imported. As we understand this and other decisions of that learned court, such articles lose such character and exemption, and so 'become part of the common mass of property within a state as to be subject to its unimpeded control,' when so disposed of by such nonresident importer or when offered for sale by him in broken packages or by retail. It is clear then that, when any shipment of beer was delivered under the contract by the company to Kingsbury at Amarillo, the title thereby vesting in him as we have seen above, the same ceased to be an article of interstate commerce, and, in so far as the contract dealt with it thereafter, it was not a contract with reference to an article of interstate commerce, and the clause of the Constitution above quoted does not prevent said statute from invalidating same. The case then comes to this: The parties contracted for the sale and purchase of beer to be transported from Milwaukee to Amarillo to be there delivered to Kingsbury and become his property. So far the transaction was interstate commerce and not subject to state regulation without the consent of Congress, nor did the statute undertake in any way to regulate or prohibit same. But the parties by the same contract voluntarily went further and so dealt with the subject, after it had ceased to be an article of interstate commerce, as to create a 'trust,' as above shown, in violation of the statute. A portion of the stipulations of the contract being lawful and the others unlawful, the taint of illegality affects and destroys the whole. Edwards County v. Jennings, 89 Tex. 618, 35 S. W. 1053. The commerce clause of the Constitution was not designed to protect the contractual rights of a person who thus voluntarily intermingles an otherwise legal interstate commerce transaction with an entirely local and unlawful one. We are therefore of the opinion that independent of congressional action the contract sued upon was void." Pasteur Vaccine Co. v. Burkey, 22 Tex. Civ. App. 232, 54 S. W. 804; White Mfg. Co. v. Hertzberg, 51 S. W. 355. In the latter case Chief Justice Fly, in rendering the opinion of the court, said: "The sale and delivery to defendant in error may have been an interstate transaction; but, after the interstate portion of the transaction had ended, then the trust part of the contract arose. It was not the intention of this court to hold that the contract was in restraint of trade under the common law, but by reason of the laws of this state; and we think that intention was obvious from the Texas authorities cited in our former opinion."

The following cases and some others are often cited as holding contrary to the Fuqua Case: Miller v. Goodman, 91 Tex. 41, 40 S. W. 718; Albertype Co. v. Feist Co., 102 Tex. 219, 114 S. W. 791; Moroney Hdw. Co. v. Goodwin, 120 S. W. 1088; McCall v. Stiff Dry Goods Co., 142 S. W. 659; Eclipse Paint Co. v. New Process Roofing Co., 55 Tex. Civ. App. 553, 120 S. W. 532. Miller v. Goodman is not properly analogous. The only question there involved is the construction of articles 745 and 746, Revised Civil Statutes of 1895, which refer only to the limitation upon the power of a foreign corporation to do business in Texas. "Interstate commerce" is defined, and the court says that the state has no authority over that class of business, but there the analogy ends. There was no contract charged to be against public policy or in violation of the state anti-trust laws, nor was the disposition of the goods after delivery in Texas involved. Albertype Co. v. Feist Co. seems upon first reading to be in conflict with Fuqua v. Brewing Co., supra; but a careful analysis will show that the court did not intend to overrule the Fuqua Case and that they are clearly distinguishable. In the Fuqua Case the parties sought to control the price and sale of the beer after the title thereto vested in the purchasers, as well as to deprive the buyer and seller of the right to deal with any other persons with reference to the same commodity in the same territory during the term of the contract. In the Feist Case no effort was made to control or limit the disposition of the goods "after they had ceased to be an article of interstate commerce," but to bind the seller to sell the

same class of goods to no other person in the same territory for a limited time. The contract clearly shows that Feist & Co. were in no manner limited in their right to sell or to fix the price of the goods or in any manner to control or limit the free and unrestrained traffic in the goods sold after the title thereto vested in Feist & Co. The same can be said of the case of Eclipse Paint Co. v. New Process Roofing Co. In that case the contract simply provided that the purchaser should have the exclusive right to handle the seller's paints for a specific period, but made no effort to control the price, terms, or method of sale after title vested in the purchaser. The case of Moroney Hardware Co. v. Goodwin is not similar in its facts to this case. The contract indicated an unlawful combination in restraint of trade among dealers in certain wares outside of Texas, but the contract contained no limitation nor attempted restraint of trade or competition in such merchandise after it was delivered to the purchaser in Texas. The court broadly stated the doctrine in that case to be that interstate transactions are not subject to the anti-trust laws of Texas, but that rule was not declared applicable to the case under consideration. It seems that the case of McCall v. Stiff Dry Goods Co. is in conflict with our holding in this case, and, as we believe, with Fuqua v. Brewing Co., supra. In the former case, a contract similar in form and made under much the same circumstances as the one now under consideration was declared without the operation of the anti-trust laws of Texas, because the transaction was interstate in its nature.

The reasoning and the conclusions of the court in the Fuqua Case are logical and convincing. That goods sold to a resident of Texas, shipped from a foreign state and delivered to the purchaser in Texas, free from any claim of title by the shipper, and sold or held for sale by the buyer as owner, become and are a part of the "common mass of property of the state" and subject to the laws thereof, seems too clear for controversy. To hold otherwise would be to enable parties so disposed to nullify the laws of Texas by the simple means of transporting the commodity to be used in an unlawful manner across the borders of our state. We think the Supreme Court, in Albertype v. Feist and Miller v. Goodman, supra, did not mean to disapprove of the doctrine laid down in the Fuqua Case. We see no distinction between the Fuqua Case and the one before us. All the elements are practically the same, and it must fall under the rule in the Fuqua Case, if that is the law of the state, and we believe it is the law.

Appellant's first and second assignments of error are overruled.

[4] By its third and fifth assignments of error appellant complains that the court did not allow it to recover the sum of $838.92 upon the account because that portion of the account was due and stated at the time the contract was made, and that appellees expressly agreed to pay that sum. This was a part of the contract and entitled to no higher consideration in the eyes of the law than other items of the account. As said by the court in Fuqua v. Brewing Co., supra, "A portion of the stipulations of the contract being lawful and the others unlawful, the taint of illegality affects and destroys the whole." Edwards County v. Jennings, 89 Tex. 618, 35 S. W. 1053. The contract in question being without the pale of the law and void, the courts of the state will not recognize or enforce it.

There is no merit in the fourth and sixth assignments of error, and they are overruled.

The judgment of the lower court is affirmed.