ARMSTRONG et al. v. W. T. RAWLEIGH MEDICAL CO. (No. 8209.)

(Court of Civil Appeals of Texas. Ft. Worth. June 5, 1915. Rehearing Denied July 3, 1915.)

1. MONOPOLIES &17—"TRUST"—RESTRAINT OF TRADE.

A contract for sale of goods by a manufacturer to a retailer, he agreeing to sell none other than its products, and to have no other business, is invalid as creating a trust, defined by Vernon's Sayles' Ann. Civ. St. 1914, art. 7796, as a combination of capital, skill, or acts by two or more to prevent competition.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 13; Dec. Dig. &17.

For other definitions, see Words and Phrases, First and Second Series, Trust.]

2. COMMERCE &40—ANTI-TRUST ACT—INTERSTATE COMMERCE.

A contract for the sale of goods to be retailed in the state, the buyer to sell only the seller's products, is not saved from invalidity as creating a trust in violation of Vernon's Sayles' Ann. Civ. St. 1914, art. 7796, because of its providing for interstate shipment thereof.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 29, 30; Dec. Dig. &40.]

Appeal from District Court, Somervell County; W. J. Oxford, Judge.

Action by the W. T. Rawleigh Medical Company against W. F. Armstrong and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

Dean & Zweifel, of Granbury, and W. E. Myres, of Cleburne, for appellants. Estes & Estes, of Granbury, for appellee.

BUCK, J. The W. T. Rawleigh Medical Company filed suit in the district court of Hood county against W. F. Armstrong, as principal, and three named parties, as sureties or guarantors, for debt, in the sum of $600, arising under the contract hereinafter set out. The court having sustained defendants' plea of privilege to be sued in the county of their residence, the case was transferred to the district court of Somervell county. From a judgment in favor of the plaintiff, in a trial before the court without the aid of a jury, the defendants appealed.

Plaintiff alleged that it was a private corporation, incorporated under the laws of Illinois, having its principal office and place of business at Freeport, Ill. and that on or about July 21, 1911, the defendants entered into the contract, a copy of which was alleged to be on file with the papers in the case, and under said contract it agreed to sell and deliver to defendant Armstrong, f. o. b. Memphis, Tenn., on credit and at wholesale prices, certain extracts, toilet articles, perfumes, etc., and that by the terms of said contract with Armstrong as principal, and the three named parties as sureties or guarantors, they promised to pay therefor and remit to plaintiff at such times and in such amounts as specified.

Defendants in their answer alleged that the written contract pleaded by plaintiff was in violation of the anti-trust laws of the state, to wit, chapter 1, tit. 130, arts. 7796, 7798, Vernon's Sayles' Texas Civil Statutes, and that, therefore, said contract was null and void, and that plaintiff could not recover thereunder.

In its supplemental petition plaintiff alleged that said shipment of goods was and came under the terms of interstate commerce, because plaintiff was a nonresident of the state of Texas and the defendants residents of said state, and that, therefore, the said laws of Texas did not apply to nor prohibit said contract.

In their three assignments of error appellants urge: First, that the court erred in overruling the defendants' general demurrer to plaintiff's petition, because the same stated no cause of action, in that the contract shows on its face that it undertakes to prevent competition in business, and shows that one of the parties to said contract should have no other business, occupation, or employment other than that specified in the contract, and that he was not permitted thereunder to purchase articles of merchandise from any person oth-

er than the other contracting party; second, that the court erred in overruling the defendants' special exception to the plaintiff's petition, because the contract as set out in said petition is in violation of the anti-trust laws of the state of Texas; and, third, that the court erred in rendering judgment in this case for plaintiff, inasmuch as the uncontradicted evidence shows that the contract between the plaintiff and defendant Armstrong, when construed in its entirety and taken in connection with the letters of instruction admitted in evidence, and with the booklet of instructions admitted in evidence, and the agreement limiting the said Armstrong to certain territory is a violation of the anti-trust laws of the state of Texas, and should not be upheld.

[1, 2] But in discussing the case we will confine ourselves to a consideration of the original contract as pleaded by plaintiff, and to which reference is made in its petition. This contract reads as follows:

"Whereas, W. F. Armstrong of Georges Creek, Tex., desires to purchase of the W. T. Raleigh Medical Company, of Freeport, Ill., on credit and at wholesale prices, to sell again on his own account to consumers, medicines, extracts, spices, soaps, toilet articles, perfumes, stock and poultry preparations, and other products furnished by it, paying his account for such goods in installments as hereafter provided:

"Therefore he hereby agrees to sell no other products than those sold him by said company, and to have no other business or employment.

"He further agrees to pay said company for all products purchased under this contract the current wholesale prices of such products, by remitting in cash each week to said company an amount equal to at least one-half the receipts from his business until his account is balanced, and, for that purpose, as evidence of good faith, he shall submit to said company weekly reports of his business; provided, however, if he pays his account in full on or before the 10th day of each month, he is to be allowed a discount of 3 per cent. (3%) from current wholesale prices. When the sale or purchase of products under this contract shall be permanently discontinued for any reason or upon notice given by either party, he further agrees to settle in cash, within a reasonable time, the balance due said company on account. Unless prevented by strikes, fires, accidents, or causes beyond its control, said company agrees to fill and deliver on board cars at place of shipment his reasonable orders, provided his account is in satisfactory condition, and to charge all products sold him under this contract to his account at current wholesale prices; also to notify him promptly of any change in wholesale prices.

"Said company further agrees to furnish him free of charge on board cars at place of shipment a reasonable amount of first-class advertising matter, report and order blanks, and printed return envelopes for his use; also to furnish him, free of charge, after he has ordered goods, suggestions and advice, through letters, bulletins, and booklets, as to the best methods of selling products purchased by him to consumers; but it is expressly agreed that nothing contained in such suggestions and advice shall be construed as in any way modifying the terms of this contract.

"This contract is subject to acceptance at the home office of the company, and is to continue in force only so long as his account and the amount of his purchases are satisfactory to said company: Provided, however, that said W. F. Armstrong or his guarantors may be released from this contract at any time by paying in cash the balance due said company on account.

"The W. T. Raleigh Medical Co.,
"[Seal.]　　By W. T. Rawleigh, President.
"W. F. Armstrong.
"[Salesman sign here in ink or indelible pencil.]
"Accepted July 21, 1911, at Freeport, Illinois.

"In consideration of the W. T. Raleigh Medical Company extending credit to the above-named person, we hereby guarantee to it, jointly and severally, the honest and faithful performance of the said contract by him, waiving acceptance and all notice, and agree that any extension of time shall not release us from liability under this guaranty.

"Responsible men sign below in ink or indelible pencil.

| Names. | Occupation. | P. O. Addresses. |
| --- | --- | --- |
| John C. Thomas. | Farmer. | Georges Creek. |
| W. B. Murphy. | Farmer. | Georges Creek. |
| B. F. Parker. | Farmer. | Georges Creek. |

"The above guarantors are entitled, upon request at any time, to a statement of principal's account.

"To insure prompt consideration of contract, names, occupations, and full addresses must appear plainly in above spaces."

It will be noted that in paragraph 2 of said contract W. F. Armstrong "agrees to sell no other product than those sold him by said company and to have no other business or employment." By this provision it was evidently intended to prohibit the defendant Armstrong, during the life of the contract in question, either to buy for sale or sell any other goods, wares, and merchandise except those handled and sold by the plaintiff company. And in the succeeding paragraph the defendant Armstrong further "agrees to pay said company for all products purchased under this contract the current wholesale price of such products."

In Texas Brewing Co. v. Templeman, 90 Tex. 277, 38 S. W. 27, the Supreme Court, speaking through Chief Justice Gaines, and in discussing the contract between the brewing company and W. M. Norwood & Co., as principals, and R. B. and Ward Templeman, as sureties, held that, where the brewing company agreed to furnish beer and ice at certain stipulated prices, and where Norwood & Co. bound themselves to handle no other beer than that of the Texas Brewing Company, except with the express written permission of said brewing company, and to pay for the merchandise purchased under said contract with acceptances of each and every invoice, that such contract was in violation of the act of March 30, 1889 (Act 20th Leg. c. 117), entitled:

"An act to define trusts, and to provide for penalties and punishment of corporations, persons, firms, and associations of persons connected with them, and to promote free competition in the state of Texas."

This act was virtually the same as is now found in chapter 1, tit. 130, art. 7796, Vernon's Sayles' Tex. Civ. Stat., with certain amendments made thereto which do not affect the application of the law to the case herein presented to us for consideration. It was held in the cited case that:

The contract provided for "a union of the capital of both parties and a union of the skill

of one of them. The contract itself and what was done under it are acts of combination. * * * By the agreement the brewing company bound itself to give to Norwood & Co. the sole representation and sale of its products in and near the town of Navasota and the latter placed themselves under the reciprocal obligation to sell no other beer than that of the company. The effect of the contract is evidently to create and 'carry out restrictions in trade' and 'to prevent competition' in the 'sale and purchase' of 'commodities'—namely, beer and ice. Clearly the act in question forbids such agreements. The statute denounces penalties for the violation of its provisions, and expressly declares 'that any contract or agreement in violation of the provisions of this act shall be absolutely void and not enforceable either in law or equity.' "

It was held in that case that no question of interstate commerce was involved, and hence the court did not discuss the effect that such phase would have upon the contract. But in the case of Fuqua v. Brewing Co. 90 Tex. 298, 35 S. W. 29, 750, 35 L. R. A. 241, this latter contingency is discussed. In the last-cited case the court held that an agreement between the brewing company and a dealer in this state, whereby the company bound itself not to sell any beer of its manufacture to any other party in the city of the dealer's residence or its vicinity, and that the dealer would not sell any beer not manufactured by the company, was a combination of capital and acts, the tendency and purpose of which was to "create and carry out restrictions in trade" and "to prevent competition in sale or purchase of commodities," which created a trust as is prohibited by the act of 1889 to which reference is made above, and, further, that the beer being manufactured in another state, such transaction, so far as it provided for the sale and purchase of beer to be transported from Wisconsin to Texas, and there delivered to the dealer, was interstate commerce, and not subject to state regulations without the consent of Congress, nor was the regulation prohibited by the statute; but, so far as the contract so dealt with the subject after it had ceased to be an article of interstate commerce as to create a trust as above shown, it was in violation of the statute, and, a portion of the contract being void, the taint of illegality affected and destroyed the whole. In the discussion of the case Justice Denman, speaking for the court, says:

"In the celebrated 'Original Package Case' of Leisy v. Hardin, 135 U. S. 100 [10 Sup. Ct. 681, 34 L. Ed. 128], the Supreme Court of the United States held that beer imported by a resident of one state into another for sale retained its character as an article of interstate commerce, exempt from regulation by the statutes of such other state, until disposed of by such nonresident importer in such other state in the original packages in which it was imported. As we understand this and other decisions of that learned court, such articles lose such character and exemption, and so 'become part of the common mass of property within a state as to be subject to its unimpeded control,' when so disposed of by such nonresident importer, or when offered for sale by him in broken packages or by retail. It is clear, then, that when any shipment of beer was delivered under the contract by the company to Kingsbury at Amarillo, the title thereby vesting in him as we have seen above, the same ceased to be an article of interstate commerce, and in so far as the contract dealt with it thereafter it was not a contract with reference to an article of interstate commerce, and the clause of the Constitution above quoted does not prevent said statute from invalidating same. The case then comes to this: The parties contracted for the sale and purchase of beer to be transported from Milwaukee to Amarillo, to be there delivered to Kingsbury and become his property. So far the transaction was interstate commerce, and not subject to state regulations without the consent of Congress, nor did the statute undertake in any way to regulate or prohibit same. But the parties by the same contract voluntarily went further, and so dealt with the subject after it had ceased to be an article of interstate commerce as to create a 'trust,' as above shown, in violation of the statute. A portion of the stipulations of the contract being lawful and the others unlawful, the taint of illegality affects and destroys the whole. Edwards County v. Jennings, 89 Tex. 618, 35 S. W. 1053. The commerce clause of the Constitution was not designed to protect the contractual rights of a person who thus voluntarily intermingles an otherwise legal interstate commerce transaction with an entirely local and unlawful one. We are therefore of the opinion that, independent of congressional action, the contract sued upon was void."

By the terms of the contract in the instant case the plaintiff attempted to exercise a control of its products after they had become the property of the defendant Armstrong, and to prescribe limitations and restrictions with reference to the sale thereof, and we, or at least a majority of the court, think that, in this respect, the contract cannot be distinguished from that held in the Fuqua Case to be inhibited by law. The writer has some doubt about this case not being distinguishable from the Fuqua Case. In the case of J. R. Watkins Medical Co. v. Johnson, 162 S. W. 394, it was held by the Court of Civil Appeals for the Fourth District, opinion by Justice Taliaferro, that a contract very similar in character was violative of articles 7796 and 7798, Revised Statutes 1911, and was not protected by virtue of the interstate commerce character of the original transaction. In Wood v. Ice & Coal Storage Co., 171 S. W. 497, the Court of Appeals for the Fifth District, opinion by Justice Rasbury, held in a case that did not involve the interstate commerce feature that a contract whereby a retail ice dealer agreed to purchase all his ice from a certain manufacturer and wholesaler so long as the latter could supply his demands, and the wholesaler agreed to sell a certain quantity and as much more as possible to a retailer at a fixed price unless the market price should go below that when the market price should prevail, was contrary to Revised Statutes 1911, art. 7798, subd. 1.

We are cited by appellee to a number of authorities contended to be in support of the validity of a contract similar to the one under consideration, but, except as to the case of McCall v. Stiff Dry Goods Co., 142 S. W. 659, we do not think they are in conflict with the holding in the leading case of Fuqua v.

Brewing Co., supra, and, as these cases are rather fully discussed by Judge Taliaferro in Watkins Medical Co. v. Johnson, supra, no good purpose could be subserved by a fuller discussion here. We are not able to harmonize the case of McCall v. Stiff Dry Goods Co. with the holding of the Supreme Court in Brewing Co. v. Templeman, and Fuqua v. Brewing Co., heretofore cited, and we concede that the McCall Case is in conflict with these authorities and with this opinion. See T. & P. Coal Co. v. Lawson, 89 Tex. 394, 32 S. W. 871, 34 S. W. 919, and Welch v. Wind Mill Co., 89 Tex. 653, 36 S. W. 71, the last-cited case distinguishing between a contract of agency and one between vendor and vendee.

Being of the opinion that the contract upon which plaintiff bases his right of recovery is in violation of article 7796, and perhaps also article 7798, c. 1, tit. 130, Vernon's Sayles' Texas Civil Statutes, it is the order and judgment of this court that the judgment of the trial court be reversed, and judgment be here rendered for appellant.

Reversed and rendered.