————o————

## No. 7010.

## STANDARD BREWING COMPANY v. STOCK & COMPANY, LTD.

### Syllabus.

An agreement whereby a brewer gives to a retailer certain benefits or advantages so long only as the retailer continues to handle in his business the beer of said brewer and no other, it is not against the public policy of the State or the statutes declaratory thereof, as tending to restrain trade, create a monopoly or stifle competition. Act 86 of 1890; Act 90 of 1892; Act 11 of 1915, E. S.

Appeal from the Civil District Court, Parish of Orleans, No. 117,393, Division "E"; Honorable George H. Theard, Judge. Amended.

Buck, Walshe & Buck, for plaintiff and appellee.

Cage, Baldwin & Crabites and T. B. Watkins, for defendant and appellant.

His Honor, EMILE GODCHAUX, rendered the opinion and decree of the Court, as follows:

On April 27, 1914, a contract was entered into between the parties hereto, which in substance provided that in consideration of a loan that day made by the Standard Brewing Company, plaintiff herein, to Stock & Co., Ltd., defendant herein, to be repaid by the latter in twenty-five equal monthly installments after said date, as evidenced by twenty-five notes bearing interest from maturity only, Stock & Co., Ltd., agreed that during the term of the loan it would "handle" at its place of business in this city the keg beer of the Standard Brewing Company and no other, the said beer to be sold to it at $6.60 per barrel, and the agreement further specifying that should Stock & Co., Ltd., fail to meet the notes as they mature, or should it cease during the term of the loan to handle said beer exclusively, then and in that or either event, the entire loan would, at the option of the Standard Brewing Company, at once mature and become exigible.

On August 22, 1916, that is, when all the notes had reached maturity, the Standard Brewing Company filed the present suit on sixteen of said notes which then remained unpaid; and the defense is that no recovery lies because the consideration or contract upon which said notes are based is or was illegal, being in restraint of trade, violative of the public policy of the State and denounced by its statutes.

In substance the foregoing agreement evidences merely a transaction whereby a brewer gives to a retailer certain benefits or advantages, that is, the benefit of a loan without interest, so long only as the retailer continues to handle in his business the beer of said brewer and no other.

316

The earlier statutes of the State, Act 86 of 1890 and Act 90 of 1892, prohibit contracts, the object or effect of which is to restrict trade, to create a monopoly or to stifle competition; and a statute enacted after the contract in question was executed, Act 11 of 1915, E. S., prohibits agreements which "substantially lessen competition or tend to create a monopoly"—and perhaps any or all of these statutes are simple declaratory of a public policy of the State existing prior to and independent of their enactment.

However that may be, we fail to see in what respect the contract in question is violative of these prohibitions. By it the brewer, as he has a right to do in an effort to enlarge his sales and expand his business, agrees to grant advantages to the retailer so long as the latter purchases from the former all the beer required by him in his business. The brewer's right to sell to other retailers on similar or other terms is in no manner impaired or curtailed; while on the other hand the retailer is at all times free to withdraw, forfeiting thereby not the benefits he had heretofore derived, but merely those he would thereafter enjoy should he continue under the agreement—and it is immaterial whether his withdrawal be occasioned by the offer of greater advantages from competing brewers or solely by caprice on his part.

Each of the parties being thus left free to continue or to discontinue dealing with each other or to deal with others as the occasion may arise, it hardly can be affirmed that the contract restricts trade or competition or in any manner tends to create a monopoly.

The Louisiana authorities cited by appellant are not applicable for in these cases the purpose and necessary consequences of the contracts was to destroy competition and erect a monopoly.

317

*India Bagging Co. v. Kock, 14 An., 168.*
*Fabacher v. Bryant & Mather, 46 An., 820.*

And in the Texas cases the contracts restricted the seller's right to vend to others and a monopoly within a certain territory was created in favor of the purchaser—constituting acts expressly defined as illegal by the statutes under consideration.

*Texas Brewing Co. v. Templeman, 38 S. W.,*
27.
*Fuqua v. Pabst Brewing Co., 38 S. W., 29.*
*Texas Brewing Co. v. Meyer, 38 S. W., 263.*
*Texas Brewing Co. v. Durrum, 46 S. W., 880.*
*Simmons v. Terry, 78 S. W., 1103.*

The judgment was for plaintiff, but through oversight it failed to award attorneys' fees as prescribed by the terms of the notes, and an amendment in that respect is necessary.

It is accordingly decreed that the judgment be amended and supplemented by adding thereto an award in favor of plaintiff and against defendant in the sum of $170.00 as attorneys' fees; and as thus amended and supplemented, the judgment be affirmed at appellant's cost in both Courts.

Amended.

Opinion and decree, May 14th, 1917.

Rehearing refused, June 11th, 1917.

Writ denied, November 2nd, 1917.