## HUBB–DIGGS CO. v. MITCHELL.
(No. 6367.)

(Court of Civil Appeals of Texas. Austin. May 4, 1921. Rehearing Denied June 1, 1921.)

1. **Monopolies** ⬅️17(1)—Contract held to fix price in violation of anti-trust laws.

A contract between wholesale and retail dealers, providing that retailer shall sell tractor at price fixed by manufacturer for sale to retail trade, and requiring wholesaler to reimburse retailer for any decrease in the retail price of tractors, *held* an agreement to fix and maintain price for the sale of a commodity, in violation of Rev. St. 1911, art. 7796, subds. 2, 4, 5.

2. **Pleading** ⬅️214(1)—Facts alleged in petition admitted by general demurrer.

Facts stated in petition are admitted by general demurrer.

3. **Judgment** ⬅️145(4) — Answer to petition alleging illegal contract held to present a meritorious defense on motion to set aside default.

In retail dealer's action against wholesale dealer to recover reduction in price of tractors, in which it was alleged that retailer had agreed to sell tractors at market price, and that wholesaler had agreed to reimburse retailer on reduction thereof, answer, denying that wholesaler had agreed with retailer as to fixing the price and as to reimbursement of retailer

by wholesaler on decline in prices, and alleging that the market value of the tractors was at all times the market price at time of sale to retailer, and that there was no loss or damage to retailer because his reduction of price was voluntary, *held* to present a meritorious defense, on motion to set aside default judgment and for a new trial, as against contention that the agreement alleged in petition was illegal, and that court should not aid party to illegal agreements who has suffered default to go against him.

**4. Appeal and error  &#9758;957(1)—Judgment &#9758; 139—Discretion in setting aside of judgments cannot be arbitrarily exercised.**

The discretion enjoined by the court in the matter of setting aside default judgments is not an arbitrary discretion, and is subject to such review, where manifest injustice has been done.

**5. Judgment  &#9758;143(3) — Default entered against corporation set aside, where neither officers nor attorneys of corporation had actual knowledge of service of citation until after judgments.**

Where return day stated in citation issued and served upon defendant corporation was incorrect, and where another citation giving the correct return date was served upon the corporation, but where neither the officers of the corporation nor its attorneys to whom such citation had been referred had actual knowledge of the service of the second citation until after default judgment was taken, the default will be set aside; there being an equitable excuse for the failure to appear and answer.

Appeal from Coleman County Court; L. G. Matthews, Judge.

Suit by W. I. Mitchell against Hubb-Diggs Company. Default judgment was rendered for plaintiff, and from an order overruling defendant's motion for a new trial, defendant appeals. Reversed and remanded.

McLean, Scott & McLean, of Fort Worth, and Snodgrass, Dibrell & Snodgrass, of Coleman, for appellant.

Critz & Woodward, of Coleman, for appellee.

BRADY, J. Appellee sued appellant, a corporation, in the county court of Coleman county, for damages for breach of contract, in the sum of $969.50. The petition was filed April 7, 1920, and on the same day a citation was issued and duly served upon appellant, commanding it to appear "on the first Monday in July, 1920, the same being the 5th day of July, 1920." The return day stated in this citation was incorrect, and should have been the first Monday in June, being the 7th day of June. Having discovered the mistake, appellee's attorneys procured the issuance of another citation, giving the correct return date, which was served by leaving a

copy of the citation, together with a certified copy of the petition, at the principal office of the company. The service of the second citation was in time for the June term, and, appellant having made default, appellee, on appearance day, June 8, 1920, took judgment by default for the full amount claimed, with interest and costs of suit.

It appears that the first citation was turned over by the president of the company to its attorneys at Fort Worth, for attention, and that neither they nor the officers of the company had any actual knowledge of the service of the second citation until after judgment was taken.

In response to the first citation, appellant's counsel forwarded a plea of privilege to the clerk, on June 25, 1920, which was filed June 26, 1920, at the same time advising appellee's attorneys that they were filing the plea. The reply of said attorneys informed counsel for appellant that judgment by default had been previously rendered. After some correspondence between the attorneys in which appellee refused to agree to set aside the judgment, appellant, on August 26, 1920, filed motion for new trial, and on September 4th appellee filed contest of the motion. The court heard the matter upon the verified motion of appellant and upon the sworn contest of appellee, together with the evidence introduced at the hearing. The motion was overruled, from which this appeal was taken.

Appellant contends that the court erred in rendering judgment by default for appellee, and in refusing to set the same aside, because the contract alleged was subject to general demurrer as being in violation of the anti-trust laws of the state. A careful consideration of the contract alleged, as the basis for recovery, convinces us that it was violative of several provisions of our statutes against trusts and monopolies.

Article 7796, Revised Statutes 1911, among other things, defines a trust to be a combination of capital, skill or acts between two or more persons, firms, corporations, or associations of persons, or either two or more of them, for any of the following purposes:

"2. To fix, maintain, increase or reduce the price of merchandise * * * or commodities. * * *

"4. To fix or maintain any standard or figure whereby the price of any article or commodity of merchandise, * * * shall be in any manner affected, controlled or established.

"5. To make * * * any contract * * * by which they shall agree in any manner to keep the price of an article or commodity * * * at a fixed or graded figure, or by which they shall in any manner affect or maintain the price of any commodity or article."

These and related provisions of the anti-trust laws have been frequently before our courts. Among the cases dealing with this

question may be cited the following: Wood v. Tex. Ice & Cold S. Co., 171 S. W. 497; Star Mill & Elevator Co. v. F. W. G. C., 146 S. W. 604; Segal v. McCall, 108 Tex. 55, 184 S. W. 188; Woods v. American Brew Ass'n., 183 S. W. 127; Am. Brewing Ass'n v. Woods, 215 S. W. 448; Fuqua et al. v. Pabst Brewing Co., 90 Tex. 298, 38 S. W. 29, 750, 35 L. R. A. 241; Coal Co. v. Lawson, 89 Tex. 394, 32 S. W. 871, 34 S. W. 919; Brewing Co. v. Templeman, 90 Tex. 277, 38 S. W. 27; Tex. Brewing Co. v. Anderson, 40 S. W. 737; Tex. Brewing Co. v. Durrum, 46 S. W. 880; Mansur & Tabbetts Imp. Co. v. Price, 22 Tex. Civ. App. 616, 55 S. W. 764; Pasteur Vaccine Co. v. Burkey, 22 Tex. Civ. App. 232, 54 S. W. 804; White Dental Mfg. Co. v. Hertzberg, 51 S. W. 355; Coal Co. v. Lawson, 89 Tex. 394, 32 S. W. 871, 34 S. W. 919; Houck v. Association, 88 Tex. 184, 30 S. W. 869; Simmons & Co. v. Terry, 79 S. W. 1103; State v. Racine Sattley Co., 63 Tex. Civ. App. 663, 134 S. W. 401; Jersey Creme Co. v. McDaniel Bottling Co., 152 S. W. 1187; J. R. Watkins Medical Co. v. Johnson et al., 162 S. W. 394; Rawleigh Medical Co. v. Mayberry, 193 S. W. 199; Armstrong v. Rawleigh Medical Co., 178 S. W. 582; Pictorial Review v. Pate Bros., 185 S. W. 309; Rawleigh Med. Co. v. Fitzpatrick, 184 S. W. 549; Rawleigh Med. Co. v. Gunn, 186 S. W. 385; Newby v. W. T. Rawleigh Co., 194 S. W. 1173; Whisenant et al v. Shores-Mueller, 194 S. W. 1175; Pennsylvania Rubber Co. v. McClain, 200 S. W. 586; Dodd v. W. T. Rawleigh Co., 203 S. W. 131; State v. Willys-Overland Co., 211 S. W. 609. These authorities are referred to, not as being in point upon the facts involved, but as illustrating the uniformity with which the principles and policies embodied in our statutes against trusts and unlawful conspiracies have been recognized and enforced.

[1] In the absence of any authority, we should not hesitate to hold the contract made the basis of this suit to be illegal and void, as in contravention of the statutory provisions heretofore stated. It was, in substance, alleged that on or about June 7, 1919, appellant sold and delivered to appellee seven Fordson tractors, the appellant being a wholesale dealer in these articles, and the appellee a retail dealer. It was alleged that the market value of the tractors at the residence of appellee was at all times $930 each, and it was expressly averred that—

"The said defendant then and there, and at the time of said sale, agreed with plaintiff that the same should be sold at said sum of $930."

The plain effect of this averment is that the parties had agreed to fix and maintain the price for the sale of a commodity or article of commerce. It is then alleged that about June 17th appellant wired appellee that the manufacturers of the tractors, Henry Ford & Son, had reduced the price, and wired and instructed appellee to likewise reduce the price on the tractors so as to thereafter sell the same for $791.50 to the retail trade. It is next alleged that appellant had, by various contracts and writings, agreed and contracted with appellee to indemnify and save him harmless from any decline or reduction in price, and had agreed and contracted with him to repay and reimburse him—

"for any decrease in the retail price of said tractors put into effect by plaintiff at the instance or request of defendant; and that by virtue of and in accordance with said contracts and agreements with plaintiff he reduced the retail price of said tractors from $930 each to $791.50 each."

It cannot be even plausibly argued that this is not an averment that appellee, in pursuance to contracts and agreements theretofore made, reduced, fixed, and maintained the retail price of the tractors.

The next paragraph of the petition contains an allegation to the same effect, and expressly recites that—

The contract for indemnity and reimbursement was dependent "upon the condition of the plaintiff putting said reduction to effect, and that said reduction was put into effect at the instance and request of said defendant, and for the benefit of defendant, and in accordance with said contract, agreement and guaranty upon his part to this plaintiff."

These allegations plainly show contracts and agreements violative of most, if not all, of the provisions of the anti-trust statutes stated above.

In holding the contract, as pleaded, void, we do not mean to be understood as deciding that a mere contract of a wholesale dealer to reimburse a retailer for any decline in price of merchandise or commodities sold him would be void when not made in connection with and in pursuance of illegal agreements fixing, maintaining, or reducing prices. If the appellee had pleaded such a contract, disassociated from the contracts and agreements referred to, a different question would be presented.

[2] While we have held that the contracts pleaded were violative of the laws against trusts, if this were the only defense urged by appellant to the judgment by default, it may be that we should not grant the relief of setting the same aside, on the principle that equity will not aid either party to an illegal contract. If the facts stated in the petition were true, as is admitted by general demurrer, the parties would be in pari delicto; and it would appear that a court should not aid a party to illegal agreements who has suffered default to go against him. However, that is not the only nor indeed the main defense set up in the answer and in the motion for new trial.

In addition to a plea of privilege, appellant entered a sworn denial of the averments of the petition. Furthermore, it expressly denied that it ever agreed with appellee to reduce or fix the price of the tractors, and alleged that it did not agree to reimburse appellee for any decline in prices, nor make any guaranties in reference thereto. It was also pleaded, which seems to find support in the averments of the petition itself, that the market value of the tractors was at all times $930, and that there was no loss or damage to appellee, because his reduction of price was voluntary, and he could not therefore impose liability upon appellant. It was also alleged that the appellee did not introduce any evidence as a basis for the default judgment, and that, his claim not being liquidated nor proven by an instrument in writing, it was necessary that evidence should be introduced before a valid judgment by default could be taken.

[3] We are of the opinion that these pleadings show a meritorious defense; and if equitable reasons have been shown why answer was not filed before judgment, or was filed within such time as that appellant was entitled to present its defense, the motion should have been granted.

We do not agree with the contention of appellant that it was not legally served with citation to the June term of court. The officer's return and the evidence upon this point show legal service according to a mode provided by statute, and the attempt to impeach the return and service was unsuccessful.

Nor do we find it necessary to pass upon the interesting question as to whether this was an unliquidated demand upon which evidence was necessary to ascertain the damages before a valid judgment by default could be rendered.

In view of articles 1938 and 1939, Revised Statutes of 1911, and the rule early announced in this state that a judgment by default admits all of plaintiff's cause of action except the damages claimed, there is great force in the suggestion of appellant's counsel that the final judgment by default without the introduction of evidence was erroneous. Holland v. Cook, 10 Tex. 244; Herring v. Herring, 189 S. W. 1105; Dancy v. Rosenberg, 174 S. W. 831. However, as we have stated, we prefer not to decide this question.

[4] As we have indicated, the judgment was upon a contract repugnant to the policy of the state against trusts and unlawful conspiracies, to which the defendant pleaded a meritorious defense, but the chief difficulty we have had in reaching a satisfactory conclusion is upon the question whether appellant has shown equitable grounds for setting aside the judgment. From the sworn answer and motion and the other evidence considered at the hearing, it fairly appears that, while there was legal service of the second citation, the officers of the corporation had no actual knowledge of it until after the judgment was taken. It is further shown that appellant and its counsel were misled into suffering judgment by default to be taken by the erroneous return date stated in the first citation. We find an utter want of bad faith indicated, and while these considerations do not afford a legal excuse, they have a strong appeal in equity. It is insisted, however, that a question of this sort is primarily for the discretion of the trial court. Nevertheless, the discretion is not an arbitrary one, and is subject to review where manifest injustice has been done. The question which has given us the greatest concern is the delay in filing the motion, but it was shown that it was filed at the same term of court, and but for the absence of the trial judge during the last week of the term the motion might have been heard, and the plea of privilege, and even the trial on the merits have been had at the same term.

[5] The correspondence of the attorneys and the other evidence showing the absence of the president of the company, who had peculiar knowledge upon the subject-matter of the litigation and the handling of this matter for appellant, indicates that there was substantial excuse for the delay. Upon the whole, we think the showing made presented an equitable excuse for both the failure to appear and answer before default judgment was rendered, and to sooner present the defenses. Dancy v. Rosenberg, 174 S. W. 831, and authorities there cited.

We are of the opinion that no substantial injustice will be done appellee by ordering the judgment set aside, and the opportunity given to appellant to present its plea of privilege and its answer to the merits; and that the trial court should have granted the motion. The case will be reversed, and the cause remanded.

Reversed and remanded.