LOCK et al. v. CITIZENS' NAT. BANK.

(Court of Civil Appeals of Texas. Amarillo. March 7, 1914. On Motion for Rehearing, April 11, 1914.)

1. BILLS AND NOTES (§ 354*)—BONA FIDE PURCHASERS—CONSTRUCTIVE NOTICE.

The amount paid by the purchaser of a note of a solvent maker may be so disproportionate to its face value, especially if bought from a stranger as to imply a guilty knowledge or a willful ignorance of facts connected with the execution of the paper which could have been ascertained by reasonable inquiry, but this rule does not require that the full face value should be paid.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 904, 905; Dec. Dig. § 854.*]

2. BILLS AND NOTES (§ 354*)—BONA FIDE PURCHASERS—CONSTRUCTIVE NOTICE.

That a bank discounted the note of a solvent maker purchased from a stranger about 10 per cent. did not deprive it of the standing of a bona fide purchaser where, at the time of the purchase, the makers did not know of the fraud committed by the payee, and the bank, had it made inquiry, would therefore not have learned of the fraud.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 904, 905; Dec. Dig. § 354.*]

3. MONOPOLIES (§ 17*) — VALIDITY — RESTRAINT OF TRADE.

A contract giving one party an exclusive right to vend an article throughout a specified district and fixing a price below which he was not authorized to sell did not violate the antitrust statute of this state if the article was a patented one; the object of the patent law being to create a monopoly.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 13; Dec. Dig. § 17.*]

4. MONOPOLIES (§ 17*)—INTERSTATE COMMERCE—APPLICATION OF STATE LAWS.

A contract giving an exclusive right to sell an article in a specified district and fixing the selling price was not in violation of the antitrust statute of this state, where the articles were to be manufactured and delivered to the party given the exclusive right in another state.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 13; Dec. Dig. § 17.*]

5. BILLS AND NOTES (§ 354*)—BONA FIDE PURCHASERS—EXTENT OF RECOVERY.

A purchaser of a negotiable security before maturity, who is not personally chargeable with fraud, is entitled to recover its full amount against the maker, though he may have paid less than its par value whatever the original infirmity in the security.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 904, 905; Dec. Dig. § 354.*]

6. BILLS AND NOTES (§ 534*)—ACTIONS—BURDEN OF PROOF—ATTORNEYS' FEES.

In an action on a note stipulating for attorneys' fees, where there was no proof that

the stipulated fees were unreasonable or unconscionable, the court was authorized to act on the stipulation and enter judgment for the stipulated amount.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1946, 1947; Dec. Dig. § 534.*]

**On Motion for Rehearing.**

7. TRIAL (§ 396*)—PAROL EVIDENCE—EFFECT OF ADMISSION WITHOUT OBJECTION—FINDINGS.

Oral statements of a party prior to the execution of a written contract were merged therein, and, though received in evidence without objection, could not form the basis of a finding or judgment.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 935–938; Dec. Dig. § 396.*]

8. TRIAL (§ 26*)—ADJOURNMENTS—DISCRETION.

In an action on a note by an indorsee, where it appeared that at the time of its purchase the makers did not know of the fraud practiced by the payee and that had the indorsee made inquiry it would therefore not have learned of the fraud, the court did not abuse its discretion in refusing to suspend or delay the case to enable a witness to produce the indorsee's books for the purpose of showing the exact amount of the discount; the witness testifying that he could not tell the exact amount without the books.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 42; Dec. Dig. §§ 26.*]

9. COURTS (§ 247*)—CERTIFYING QUESTIONS TO SUPREME COURT.

The Court of Civil Appeals will not certify to the Supreme Court a question which in its opinion has been previously decided by that court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 487, 749, 751–754, 757, 759, 760, 762–764; Dec. Dig. § 247.*]

Appeal from Hale County Court; W. B. Lewis, Judge.

Action by the Citizens' National Bank against C. E. Lock and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Austin C. Hatchell, of Plainview, for appellants. Geo. L. Mayfield and L. R. Pearson, both of Plainview, for appellee.

HENDRICKS, J. This suit was filed by the appellee, the Citizens' National Bank of Plainview, Tex., in the county court of Hale county, Tex., against C. E. Lock and F. M. Lock, the appellants, on a promissory note payable to the order of G. A. Henderson, which was negotiated by Henderson to the appellee bank. The appellants claim that the note was procured by fraud, of which appellee had full knowledge, was without consideration, and was in contravention of the anti-trust laws of the state. The trial court, after the close of the evidence, instructed the jury to find for the plaintiff against the defendants Lock for the principal and interest of the note and 10 per cent. attorneys' fees.

At the time of the execution of the note, a written contract was executed by G. A. Henderson and C. E. Lock and F. M. Lock, by the terms of which the Locks were ostensibly appointed as sole and exclusive agents for the sale of a combined educational chart, drawing board, and writing desk, in Smith county, Tex., from the 14th day of December, 1911, to August 9, 1917, in consideration of the agents purchasing from Henderson 36 of said articles at $8.50 per chart, to be delivered f. o. b. Muncie, Ind., and to be shipped to Lock & Son within 30 days from the date of the contract; the said Henderson granting to the said Lock & Son an equal right with Henderson and his other agents to have all orders filled by the manufacturer at Muncie, Ind., according to the manufacturer's contract with Henderson at the wholesale price of $1.50 per chart. Besides the exclusive agency for the sale of the charts in Smith county, Lock & Son were granted another agency with equal privilege with Henderson and his other authorized agents, to sell said chart in the counties of Hale, Swisher, Floyd, and Briscoe, for the same period of time. Aside from the written contract, as abbreviated above, appellants testified, in substance, that Henderson orally represented that as to the Panhandle counties named no other person would have any right to sell the chart in that territory and that no other person would be able to purchase the same chart except from him (Henderson), the latter claiming absolute control over the sale of the same, that none of the agents were permitted to sell the charts for less than $8.50 each and stated that they were constructed out of the best oak wood; however, testifying that they read the contract and the note and signed the same. The appellants stated that the 36 charts received by them were made of inferior material, and that in attempting to sell the charts in some of the Panhandle territory it developed that they were in competition with other charts listed by a mail order house at $2.75, which, with the freight added, would have made the chart cost in that territory $3.25, and, because other firms were selling the same chart in other territory for less money, the particular contract to them was worthless. At the time the written contract and the note were executed, C. E. Lock addressed a letter at the solicitation of Henderson, to the Citizens' National Bank, the appellee, as follows: "I have this day made one note, payable to G. A. Henderson, for $306.00, due November 15, 1912. Will be agreeable with me for you to take up my note."

[1, 2] When Henderson negotiated the note to the bank, he presented the letter, and the bank discounted the note about 10 per cent., and we infer from the record that this transpired within a short time after the execution of the note and contract. The president of the bank testified that he had an idea that the note purchased was given for school supplies; that an agent of Henderson, selling charts for him, was staying at his house at that time; that he knew nothing of

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

any statements made to Lock by Henderson, and, as we construe the record, this is the only knowledge of any fact in connection with the transaction possessed by any officer of the bank. Appellants contend that the discount is such, coupled with the purchase of the note in suit from a stranger, and the knowledge of the bank that C. E. Lock, the father, was solvent, was such constructive notice as to put the bank upon inquiry. The case of Oppenheimer et al. v. Farmers' & Merchants' Nat. Bank, 97 Tenn. 19, 36 S. W. 705, 33 L. R. A. 767, 56 Am. St. Rep. 778, by the Supreme Court of Tennessee, cited by appellant upon another proposition, is authority against the contention. It is true that the real amount of the consideration in some cases and under some circumstances is important in determining good faith and constructive notice in the purchase of negotiable paper. The amount paid by a purchaser of paper executed by a solvent maker may be so disproportionate to the face value of the security, and especially so if bought from a stranger, which would imply a guilty knowledge, or a willful ignorance of facts, in connection with the execution of the paper which could have been ascertained by reasonable inquiry. However, it is uniformly held that the rule does not require the full face of the paper to be paid in its purchase, and a contrary principle would not only deprive commercial paper of one of the most essential and valuable incidents of negotiability—that is, the sale of same—but necessarily affect the business and commerce of the country. King v. Doane, 139 U. S. 166, 11 Sup. Ct. 465, 35 L. Ed. 87.

The officers of the bank testified that they relied upon the letter in the purchase of the paper. It was some time after the execution of the contract and the negotiable paper in question that the Locks received the shipment of the charts purchased. If the paper had been sold to the bank prior to the delivery of the charts and the bank had inquired of the Locks, what information would they have received as to any fraud between the Locks and Henderson? The Locks had none until they received the charts and attempted to sell the same. We necessarily overrule the assignment insisting upon this contention.

[3] Neither do we think that it is sufficiently shown that the note, as a part of the contract, is in violation of the anti-trust statute of this state. This contract has the usual earmarks of a sale of the exclusive right to vend a patented article throughout a specified district, especially as to Smith county. The Locks testified that Henderson informed them that the article was patented, and if so the evidence suggests that Henderson assumed to control it. The object of the patent law is monopoly, "and the rule is, with few exceptions, that any conditions which are not in their very nature illegal with regard to this kind of property, imposed by the patentee and agreed to by the licensee for the right to * * * sell the article, will be upheld by the courts. The fact that the conditions in the contracts keep up the monopoly or fix prices does not render them illegal." Bement & Son v. National Harrow Co., 186 U. S. 91, 22 Sup. Ct. 755, 46 L. Ed. 1069.

[4] A contract of the character indicated by the quotation was held by that court as not void as an unlawful restraint on interstate trade or commerce and was not forbidden by the act of Congress on that subject.

The Supreme Court of Texas held, in the case of Albertype Co. v. Gust Feist Co., 102 Tex. 219, 114 S. W. 791, that where the former agreed to sell the latter 2,000 copies of souvenir albums, and further agreed not to sell any of said albums in the city of Galveston for one year to any other person, where the articles were to be manufactured in a foreign state and shipped into this state, was not a contract in contravention of our antitrust statute for the reason that the transaction under consideration constituted interstate commerce, and such commerce is not subject to the anti-trust laws of this state. This contract seems to contemplate the right of the Locks to purchase charts at a certain price, to be manufactured at Muncie, Ind., with which the said Henderson had another contract providing for the sale and manufacture of same. If it were not a patented article, we are inclined to think that interstate commerce is such a salient feature of the contract as that the Supreme Court case cited would apply to this record.

[5] The appellants also contend that if there was fraud between the maker and the original payee, and the note was fraudulently put into circulation, the bank as an innocent holder should be limited in its recovery to the amount that it paid for the note with interest and attorneys' fees on that amount, and cite the following cases in support of the contention: Sperlin v. Peninsular L. & D. Co., 103 S. W. 232; People's Nat. Bank v. Mulkey et al., 61 S. W. 528; Oppenheimer v. Farmers' & Merchants' Bank, 97 Tenn. 19, 36 S. W. 705, 33 L. R. A. 767, 56 Am. St. Rep. 778; Campbell v. Brown, 100 Tenn. 245, 48 S. W. 970. The two latter are Tennessee cases. Daniel on Negotiable Instruments asserts the same doctrine, with a conflict of authority, though by the different courts of the country on the question. The Supreme Court of this state, however, in the case of Petrie & Bro. v. National Bank, 83 Tex. 427, 18 S. W. 752, 29 Am. St. Rep. 657, adopted the rule on this subject declared by the Supreme Court of the United States in the case of Cromwell v. Sac County, 96 U. S. 60, 24 L. Ed. 681: "A purchaser of negotiable security before maturity, in cases where he is not personally chargeable with fraud, is entitled to recover its full amount against its maker, though he may have paid less than its par value, whatever may have been its origi-

nal infirmity." The same question again arose in the case of Petri & Bro. v. Fond du Lac Nat. Bank, 84 Tex. 212, 20 S. W. 777, and was again decided in the same manner.

We are unable to grasp the distinction between paper fraudulently put in circulation and any other fraud in connection with the execution of negotiable paper as to the rights of an innocent holder who has paid value without notice. There are cases, of course, where a negotiable note has been fraudulently put in circulation, in which, with reference to the inception of the paper and circulation of same, the holder, although innocent, has not any rights whatever; but such cases are not applicable here. The rule of the Supreme Court of the United States, followed by our court, is based upon what is considered as the better policy as an aid to commerce in the use of such paper as an evidence of credit in substitution for actual money. Our Supreme Court having adopted the rule, we are concluded by its decision.

[6] The appellants insist that the evidence did not justify a peremptory instruction for the attorneys' fees, because that feature of the note is merely a contract of indemnity. Our Supreme Court, in the case of First National Bank of Eagle Lake v. Robinson, 135 S. W. 372, concludes the appellant on this question. There is an absence of plea and proof in this case by the appellants that the attorneys' fees agreed upon in the note are unreasonable, or unconscionable; hence "the court is authorized to act upon the amount of such fees as agreed upon by the parties and enter judgment accordingly." Upon the above consideration of this record, the cause having been decided upon its merits, it is unnecessary to pass upon the question of the result of a failure to except to a charge of the court, where the instruction to the jury is peremptory.

We conclude that the action of the trial court was correct, and the judgment is in all things affirmed.

### On Motion for Rehearing.

[7] In this cause the written contracts in substance set out in our original opinion, if deemed contracts of sale, on the question of the same being condemned by our anti-trust statutes, upon a close consideration and the comparative legal effect between the same and the one considered by the Supreme Court of the state in the case of Albertype Co. v. Gust Feist Co., 102 Tex. 219, 114 S. W. 791, we think clearly places this cause, on that question, within the scope of that case, and not within the purview of the case of Watson Medical Co. v. Johnson et al., 162 S. W. 394. If appellee contends that the testimony of the Locks, as to the statements made by Henderson prior to the time that the written contracts were made, brings this cause within the scope of the latter case cited, and that the contract, viewed as a whole, supplemented by this oral testimony,

as the contract between the parties, is condemned by the case last cited, the answer is in the condition of this record that the testimony as to the previous statements and representations made by Henderson cannot constitute the contract between them. The rule that a written memorial which merges previous negotiations excludes such proof is for the reason that the testimony is incompetent. Wigmore says (volume 4, § 2300, subd. 1): "The rule is in no sense a rule of evidence, but a rule of substantive law. It does not exclude certain data because they are for one or another reason untrustworthy or undesirable means of evidencing some fact to be proved. * * * What the rule does is to declare that certain kinds of fact are legally ineffective in the substantive law; and this, of course (like any other ruling of substantive law), results in forbidding the fact to be proved at all." The Supreme Court of the state, in the case of Henry et al. v. Phillips, 105 Tex. 466, 151 S. W. 538, with reference to a certain character of testimony in a case different in its status from the cause here, announced, however, what we believe to be the same principle, when it said: "Such incompetent testimony can never form the basis of a finding of facts in an appellate court, notwithstanding its presence in the record without objection. When the appellate court comes to apply the law to testimony constituting the facts of the case, it can only base its conclusion upon such testimony as is under the law competent. That which is not competent testimony should be given no probative force." While we are not inclined to think the oral testimony would bring this cause within the principle of the case of Watson Medical Co. v. Johnson, supra, however, when we come to the written contract, we are clearly of that opinion.

[8] Appellants insist that the trial court committed error as follows: On cross-examination of the cashier of the bank, the witness had testified that he could not tell exactly what the bank gave Henderson for the note, but to the best of his recollection it was an amount less about a 10 per cent. discount; that he could not testify to the exact amount without going to the book at the bank recording the purchase. Counsel for defendants asked the witness to secure the book and from it give the exact amount paid for the note. The court stated that he did not consider the amount as material and that it would take up too much time to secure the book. The president of the bank, who negotiated the purchase of the note, had testified that they had discounted the note about 10 per cent. When the bank purchased the note, whatever amount they paid for it, if they had inquired of the Locks in regard to the transaction between the latter and Henderson, the only information that the Locks could have imparted to the officers of the bank was that they had made a cer-

tain contract with Henderson for the purchase of certain charts and the right to purchase more to sell in certain territory, upon certain representations made by Henderson. Whether false or true, or fraudulent or not, at that time no one knew or had any means of knowing. We concede there are cases where the court could have abused his discretion in refusing to suspend or delay a case, even though a litigant has not attempted to avail himself of the proper process to obtain information from the opposite party, or to compel the production of his papers into court; but under the record here we do not think an abuse of discretion upon the real merits of the cause is exhibited.

[9] We refuse to certify to the Supreme Court a question which we conceive has been previously decided by that court, in the case of Petri & Bro. v. National Bank, 83 Tex. 427, 18 S. W. 752, 29 Am. St. Rep. 657, and again repeated in 84 Tex. 212, 20 S. W. 777.

The motion for rehearing is in all things overruled.