**NATIONAL SURETY CORPORATION,**
a Corporation, Appellant,

v.

**CURATORS OF UNIVERSITY OF MISSOURI ex rel. PAUL MUELLER COMPANY,** a Corporation, Appellee.

No. 16169.

United States Court of Appeals
Eighth Circuit.

July 6, 1959.

James H. Keet, Springfield, Mo., for appellant.

E. C. Curtis, Springfield, Mo. (Farrington & Curtis and Thomas Strong, Springfield, Mo., were with him on the brief), for appellee.

Before SANBORN, VOGEL, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by defendant, National Surety Corporation, on the performance bond given to the Curators of The University of Missouri on behalf of C. Wallace Plumbing Company, Inc. (Wallace), general contractor for the heating, ventilating, and air conditioning work on a Teaching Hospital building being erected at the University of Missouri, from judgment rendered against it upon such bond in favor of plaintiff, Paul Mueller Company, for an alleged unpaid balance due on its subcontract with Wallace. Defendant admits that it is obligated by its bond to pay any sum that may be justly due plaintiff on its subcontract. This suit is against the defendant surety only. Jurisdiction exists by reason of diversity of citizenship and the requisite jurisdictional amount.

The liability of the defendant is dependent upon the liability of its principal, Wallace, to the plaintiff. The defendant denies that there is any balance due plaintiff on the subcontract. The subcontract here in controversy calls for the payment of $176,101. This sum has been paid plaintiff except for the $3,277.-36 involved in this action, for which amount judgment has been entered.

Defendant's defense is that the plaintiff by its subcontract, among other things, agreed to "balance the air distribution system" in accordance with paragraph 100(e) and (f) of the plans and specifications; that plaintiff failed to fully perform such duty; and that upon plaintiff's refusal to do such work Wallace had the disputed work done by others and back-charged the cost thereof to the plaintiff. The reasonable cost of the back-charged work exceeded the amount withheld by Wallace. Thus, as stated by the plaintiff in its brief, the sole issue in this case is whether or not the Mueller Company, in carrying out its subcontract with Wallace, did "balance the air distribution system" as required by the subcontract. If plaintiff by its subcontract obligated itself to perform the disputed work, hereinafter more specifically described, it is not entitled to recover. If plaintiff was not required to do such work, the judgment must be affirmed.

Wallace held the general contract for heating, ventilating, and air conditioning the hospital. The plans and specifications were made part of its contract with the Curators, and Wallace was required to perform all work in the manner required by such plans and specifications. The written subcontract here in controversy signed by Wallace and the Mueller Company, so far as here material, provides:

"Paragraph First: The subcontractor agrees to furnish all material and labor for all work as hereinafter described in accordance with the general conditions, plans and specifications * * * all of which general conditions, drawings and specifications * * * form a part of a contract between the contractor and the owner and hereby becomes a part of this contract. Subcontractor agrees to perform this contract to the entire satisfaction of the Architect and/or Engineer and Contractor.

"Paragraph Twenty-fourth: Both parties to this contract have read and understood this contract, and all agreements prior to the date hereof are merged herein. The work included in this contract is: To perform the following work in strict accordance with part B of the plans * * *

"A. Furnish and install work described in Paragraphs 72, 73, and 75; furnish and install flashing for ducts through the roof, stainless steel insulation jackets, copper pans

for electric filters, and accoustic duct lining.

"B. Install only, that equipment described under Paragraphs 74, 76, 79, 80(b), 81, 82, 83, and 84 and Dampers and Vibration Isolaters.

"C. Balance the Air Distribution System in acccordance with Paragraph 100, Subparagraphs (e) and (f)."

█ The real controversy in this case relates to the obligation assumed by plaintiff by paragraph Twenty-Fourth C, above quoted. The section of the plans and specifications referred to in Twenty-Fourth C reads as follows:

"100. Testing and Adjustment:
\* \* \*

"(e) Balance the air flow in each air system to produce the quantities shown on the drawings. Adjust all volume dampers and registers in both supply and vent duct work and take anemometer or 'velometer', or other approved readings of all supply and vent registers and grilles, with simultaneous static pressure readings at each fan suction and discharge. At least three readings shall be taken at each opening. The total cubic foot delivery of all openings, plus five per cent shall equal the delivery of the respective fan. Instruments used shall have been factory calibrated within the year in which the test is made.

"(f) Provide lists in duplicate with the following:

"1) Air readings at each opening indicating velocity and c.f.m. before balancing and after final balance and c.f.m. required.

"2) Nameplate data—Fans and Motors (Identify).

"3) Voltage readings (Identify).

"4) Current readings — Fans (with belts on and off).

"5) Wet and dry bulb readings of leaving air at coils (readings at both ends of coils) and simultaneous entering air wet and dry bulb tempera-

tures, and freon suction and discharge pressures.

"6) R.P.M. Readings—Fans."
Other subparagraphs of paragrah 100, not material here, refer to other tests and adjustments to be made of the air conditioning equipment.

Plaintiff concedes that it was required to do the work described in paragraph 100(e) and (f)1. It has performed such work. Plaintiff has not performed the work described in paragraph 100(f)2 to 6, inclusive, and denies that it is obligated to perform such work, plaintiff's contention being that its testing and adjustment duties under its subcontract are limited to those described in paragraph 100(e) and (f) which fall into the category of "balancing the air distribution system," and that items set out in 100(f)2 to 6, inclusive, do not fall into such category.

This case was tried to the court. The court found that the plaintiff was not required to do the work listed in paragraph 100(f) 2 to 6, inclusive, and hence plaintiff was entitled to the unpaid balance claimed on the subcontract and judgment was entered therefor.

The court made no findings of fact except such as appear from his reported remarks made at the close of the evidence. We find nothing therein which expressly determines that the subcontract is ambiguous with reference to the disputed work here involved. The court did say, "I am impressed with the thought that about the only issue is to determine what is meant in the trade or profession, or whatever area you use, as the criterion of the words 'balance the air distribution system.'" The court then in effect found from conflicting oral evidence of experts that "balance" is limited to the type of work which sheet metal workers usually claim, and that the work listed in 100(f)2 to 6, inclusive, is not work claimed by sheet metal workers. The court found that the plaintiff had complied with its subcontract by doing that portion of the work required by 100(f) which falls in the category of sheet metals work.

Sharply conflicting oral evidence was introduced by both sides as to the meaning of "balance the air distribution system" as the term is used in the trade, and as to what part of the work required by 100(e) and (f) could be done by sheet metal workers.

It is apparent from the court's remarks and the judgment entered that the court reached his conclusion on the basis of the parol evidence as to custom and usage, and that by so doing the court impliedly determined that the subcontract was ambiguous.

Defendant contends that the subcontract is an unambiguous integrated contract and that parol evidence cannot be considered to vary its terms.

We proceed to an examination of the applicable law.

Wallace is a Texas corporation. Plaintiff is a Missouri corporation. The subcontract here involved was negotiated, executed, and delivered in Texas. The work was to be performed in Missouri. There may be some uncertainty as to whether the law of Missouri or Texas applies in the interpretation of this contract. See Edward E. Morgan Co., Inc., v. United States, 5 Cir., 230 F.2d 896, 902; Restatement of the Law of Conflict of Laws, §§ 346, 358. We deem it unnecessary to resolve the complicated conflict of laws question presented since we believe that the result would be the same whether Missouri or Texas law is applied.

■ Under Missouri law, Texas law, and the law generally, an integrated unambiguous contract cannot be varied by parol evidence. Patton v. Crews, Tex. Civ.App., 264 S.W.2d 467, 470; Remington Rand, Inc. v. Sugarland Industries, 137 Tex. 409, 153 S.W.2d 477, 483; Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977, 980; Warinner v. Nugent, 362 Mo. 233, 240 S.W.2d 941, 944; Commerce Trust Co. v. Watts, 360 Mo. 971, 231 S.W.2d 817, 820; 32 C.J.S. Evidence, § 851; 20 Am.Jur., Evidence, § 1099. In the Remington Rand case the court states, at page 483 of 153 S.W.2d:

" * * * 'If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, *it is not ambiguous. It follows that parol evidence is not admissible to render a contract ambiguous,* which, on its face, is capable of being given a definite certain legal meaning. This rule obtains even to the extent of *prohibiting proof of circumstances surrounding the transaction* when the instrument involved, by its terms, plainly and clearly discloses the intention of the parties, or is so worded that it is not fairly susceptible of more than one legal meaning or construction.' "

In the Warinner case, the Supreme Court of Missouri states at page 944 of 240 S.W.2d:

" * * * As applied to contracts the parol evidence rule 'assumes that there has been a legal act consisting of a promise or set of promises; it also assumes the integration of that act in a written memorial. It assumes the proper interpretation of a written memorial according to some standard which the law adopts; and these assumptions being made, excludes from consideration all other elements of the act though they might have been material had there been no integration in a written memorial. In other words, the written memorial, as interpreted by the law, is, for legal purposes, the sole act of the parties in regard to the matter up to the time of integration. * * * ' "

■ Parol evidence is not admissible for the purpose of attempting to create an ambiguity in a contract which upon is face is capable of being given a definite and certain legal meaning. Remington Rand, Inc. v. Sugarland Industries, supra; Lewis v. East Texas Finance Co., supra; 20 Am.Jur., Evidence, § 1143.

The subcontract we are considering in the present case is an integrated contract. The parties intended that the written subcontract evidence their re-

spective rights and obligations. We are convinced that the subcontract in clear unambiguous terms expresses the intention of the parties thereto with reference to the work to be performed by the subcontractor. There might well be merit to plaintiff's claim of ambiguity if the subcontract had merely required the plaintiff to balance the air distribution system or to balance the air distribution system as required by the plans and specifications as a whole. Under such circumstances, evidence as to what the trade considered "balancing" would be material. However, here the parties by their contract specifically provided that plaintiff was to balance the air distribution system in accordance with paragraph 100(e) and (f). The subcontract provides that the specifications are a part thereof. The parties have by their contract definitely and specifically defined the work that constitutes the required balancing. Plaintiff's obligation to balance the air distribution system in accordance with paragraph 100(e) and (f) is exactly the same as it would be if all of the provisions of 100(e) and (f) had been specifically incorporated in detail in the subcontract instead of having been made a part thereof by detailed reference. See 9 Am.Jur., Building and Construction Contracts, § 11; Pittsburgh Plate Glass Co. v. American Surety Co. of New York, 66 Ga.App. 805, 19 S.E.2d 357. Paragraph Twenty-Fourth A and B show that other work was assumed by the plaintiff by reference to numbered paragraphs of the plans and specifications. Such a means of describing the subcontractor's obligation is as effective as repeating the applicable paragraphs of the specifications verbatim in the contract.

We hold that the plaintiff by its subcontract agreed, among other things, to do all of the work described in paragraph 100(e) and (f) of the specifications.

■ Plaintiff urges that, even if the parol evidence offered could have been excluded upon appropriate objection, the defendant, by letting such evidence go into the record without objection and by offering evidence itself of custom and surrounding circumstances, has waived any right to urge that such evidence could not be properly considered by the trial court. Plaintiff cites Kimbrough v. Gross, Mo.App., 268 S.W.2d 56; National Refining Co. v. Zuckerman, Mo. App., 183 S.W.2d 390; Toedtman v. Grass, Mo.App., 116 S.W.2d 153; Fischman-Harris Realty Co. v. Kleine, Mo. App., 82 S.W.2d 605; International Text Book Co. v. Halbrook, Mo.App., 200 S.W. 705; Forest v. Rogers, 128 Mo.App. 6, 106 S.W. 1105; McFadden v. Missouri P. R. Co., 92 Mo. 343, 4 S.W. 689; and the Annotation in 92 A.L.R. 810, 812, in support of its waiver contention.

We believe that all the Missouri cases cited are factually distinguishable from our present situation. The cases relied upon by plaintiff appear to deal with situations where the question of the right of the trial court to consider parol evidence to vary an unambiguous written contract was in no way raised in the trial court. Many of the cases turn on other points and the statements relied upon constitutes only dicta. None of the cases contains a detailed discussion of the waiver rule. For the most part the cases in the A.L.R. Annotation upholding waiver are those where no question of the impropriety of varying an integrated contract by parol was raised in any way in the trial court. Such cases can be explained upon the basis that an appellate court should, in fairness to the trial court, refuse to consider questions not presented to the trial court. The cases set out in the Annotation in 92 A.L.R., commencing at page 825, show that generally, if the propriety of considering the parol evidence was raised in some way in the trial court, no waiver of the benefits of the parol evidence rule existed.

■ The courts of both Texas and Missouri and courts generally hold that the parol evidence rule is not a rule of evidence but a rule of positive and substantive law founded on the substantive rights of the parties. Commerce Trust Co. v. Watts, supra; Warinner v. Nu-

gent, supra; Davison v. Rodes, Mo.App., 299 S.W.2d 591; Patton v. Crews, supra; Pacific Finance Corp. v. Crouch, Tex.Civ. App., 243 S.W.2d 432; Bellows v. Porter, 8 Cir., 201 F.2d 429; 20 Am.Jur., Evidence § 1100; 32 C.J.S. Evidence, § 851.

In Commerce Trust Co. v. Watts, supra, the Supreme Court of Missouri states at page 820 of 231 S.W.2d:

"\* \* \* That no one may be heard to say that an actual agreement made by the parties is not reflected in their unambiguous written contract, the courts, by the application of the parol evidence rule, have uniformly held that, in the absence of fraud, duress, mistake or mental incapacity, an integrated unambiguous contract may not be varied, and a new and different contract substituted by parol evidence. \* \* \* The parol evidence rule is one of substantive law. It is not a rule of evidence. In a proper case for the application of the rule, even if the parol evidence be received without objection, it must be ignored. The writing itself becomes and is the single and final memorial of the understanding and intention of the parties. 32 C.J.S., Evidence, § 851. p. 784."

In the Annotation, 92 A.L.R. 810, 821, it is stated:

"The Texas courts also have taken the view that, as the rule that parol testimony with respect to prior or contemporaneous agreements is not admissible to vary, contradict, or add to the terms of a written instrument is one of substantive law, and not a mere rule of evidence, testimony introduced in violation of the rule, even in the absence of objection thereto, can be given no legal effect. Rubrecht v. Powers (1892) 1 Tex. Civ.App. 282, 21 S.W. 318; Lock v. Citizens' Nat. Bank (1914; Tex.Civ. App.) 165 S.W. 536; Shropshire v. Alvarado State Bank (1917; Tex. Civ.App.) 196 S.W. 977; John E. Morrison Co. v. Riley (1917; Tex.

Civ.App.) 198 S.W. 1031; Quanah, A. & P. R. Co. v. Wiseman (1923; Tex.Civ.App.) 247 S.W. 695."

In our present case defendant's contention that parol evidence is not admissible to vary the terms of the unambiguous integrated contract was raised in the trial court. Defendant in its pleadings made the assertion that plaintiff was obligated by its subcontract to perform all of the items of work listed in paragraph 100(e) and (f). Counsel for defendant in his opening statement to the court said:

"Now, that will be our first point, Your Honor, that the contract terms are plain and unambiguous and that while we will probably have to get into some technical data to explain to the Court what is included in an air distribution system, still when you size that up against what is clearly provided in the contract papers, it is clear that the papers need no interpretation aid such as what the parties said and leading up to this contract or what the customs or usages were in the trade or the business."

Defendant made an objection to the oral testimony of plaintiff's witness Falvey pertaining to what constituted "balancing" on the ground that it tended to vary the provisions of the written contract. Defendant again, in its motion for a new trial, urged that the court erred in admitting parol evidence on the issue of whether plaintiff was obligated to perform the work listed in paragraph 100(f) and in not finding that the plaintiff was bound by its subcontract to do such work. Thus, it is apparent that defendant properly raised in the trial court the issue that plaintiff was obligated by its written subcontract to do all of the items of work set out in paragraph 100(f) and that the plaintiff's obligations under its subcontract could not be varied by parol testimony.

In any event, the parol evidence relating to custom and usage does not under the record before us constitute substantial evidence to support the trial court's

judgment, when considered with the written subcontract. The parties had the right in their subcontract to designate in detail the work to be performed. This they did. Plaintiff specifically agreed to perform all the work described in 100(e) and (f) including the disputed work. Whether all such work is considered "balancing" by the trade is wholly immaterial in the light of the contractual obligation assumed. The testimony with reference to the craft that usually performs the work here involved is likewise unimportant. The contract contains no express or implied limitation to the effect that plaintiff will do only such work as falls in the sheet metal workers' field. Hence, plaintiff under its subcontract is obligated to do the work which it agreed to do, regardless of the union craft it may be required to employ to do the work.

We note that 100(f) work had a reasonable relationship to the "balancing." Plaintiff's expert, Falvey, testified "Items 2 through 6 of Subparagraph 100(f) have no bearing on actually setting a defuser or damper to accomplish balancing. They are used to give a check on whether the balancing has been done properly." Plaintiff's witness Rhodes testified, "It is a matter of contract who is to adjust equipment furnished by the mechanical contractor but installed by the sheet metal subcontractor. Installation of fans is sheet metal work, but not the motors." At least some of the equipment involved in the 100(f)2 to 6 testing and adjustment was installed by the plaintiff.

It is our conclusion that the plaintiff by its written integrated subcontract clearly and unambiguously undertook to perform all of the work listed in paragraph 100(e) and (f), the work here in dispute. The reasonable cost of the work occasioned by the plaintiff's failure to fully perform its subcontract exceeds the balance claimed by the plaintiff. The record conclusively shows that the plaintiff is entitled to no further payment on its subcontract, and the court erred in entering judgment for the plaintiff. Defendant is entitled to judgment dismissing plaintiff's complaint.

Reversed and remanded.