OLAH et al., Appellees,

v.

GANLEY CHEVROLET, INC., Appellant.

[Cite as *Olah v. Ganley Chevrolet, Inc.*, 191 Ohio App.3d 456, 2010-Ohio-5485.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 94273.

Decided Nov. 10, 2010.

Ronald L. Burdge and Elizabeth Ahern Wells, for appellees.

Ulmer & Berne, L.L.P., Paul R. Harris, and David D. Yeagley, for appellant.

SEAN C. GALLAGHER, Administrative Judge.

{¶ 1} Defendant-appellant, Ganley Chevrolet, Inc., appeals the judgment of the Cuyahoga County Court of Common Pleas that granted judgment in favor of plaintiffs-appellees, Jennifer Olah and David Olah. The Olahs have filed a cross-appeal concerning the award of attorney fees and costs. For the reasons stated herein, we reverse the judgment of the trial court that granted judgment in favor of the Olahs, and we find that the cross-appeal is moot.

{¶ 2} In October 2004, the Olahs purchased a 2004 Chevrolet Aveo from Ganley. The purchase contract reflects that the purchase was for a used 2004 Chevrolet Aveo with 541 miles for a purchase price of $9,400. The purchase contract specified that it is "the entire agreement between the parties, and no other agreements or representations shall bind the parties."

{¶ 3} The Olahs made the decision to go to Ganley after seeing a newspaper advertisement for a new Chevrolet Aveo with a sales price of $7,777. They told the salesperson that they were interested in purchasing a new Aveo and mentioned the advertisement. After showing the Olahs some different options, the salesperson directed the Olahs to a vehicle across the street that had a few miles on it but that they could get for a good deal. The vehicle had 541 miles on it and came with additional options from the base-model Aveo. The Olahs did not observe a sticker in the window and were told it was taken down for test driving.

{¶ 4} After taking the vehicle for a test drive, the Olahs negotiated the purchase of the vehicle with the salesperson. The Olahs maintain that they were under the impression that the vehicle was new and they were told the mileage was from test drives and dealer usage. Thus, they thought they had purchased a new vehicle with 541 miles on it, and they were under the impression that the vehicle came with a full warranty.

{¶ 5} When the Olahs discovered that the vehicle as purchased was not new, they filed suit against Ganley. At the time of trial, the vehicle had around 38,000 miles on it and no warranty claims had ever been made. Other than tire replacement and standard oil changes, no significant repairs were required on the vehicle in the nearly four years that the Olahs had owned it.

{¶ 6} In their complaint, the Olahs asserted individual claims against Ganley for violation of the Ohio Consumer Sales Practices Act ("CSPA"), breach of contract, violation of the Motor Vehicle Sales Rule, and fraud and deceit. Among the relief prayed for by the Olahs was rescission of the contract. The complaint also included a class-action claim against Ganley for violation of the Federal Trade Commission's Used Car Window Sticker Rule. The trial court denied the Olahs' motion to certify the case as a class action.

{¶ 7} In a prior appeal, this court found that the arbitration provision in the purchase contract was substantively unconscionable, and we remanded the matter to the trial court to determine whether the arbitration clause was also procedurally unconscionable and thus unenforceable. *Olah v. Ganley Chevrolet, Inc.*, Cuyahoga App. No. 86132, 2006-Ohio-694, 2006 WL 350204. On remand, Ganley withdrew its motion for a stay of proceedings, and the matter proceeded to a bench trial.

{¶ 8} At trial, the court dismissed the breach-of-contract claim on Ganley's motion. The court found in favor of the Olahs on their CSPA and fraud claims and awarded the Olahs rescission of the contract and other damages. The trial court also entered an award of attorney fees for the Olahs in the amount of $32,364.85 with court costs. After arguments concerning setoff were made, the trial court entered a purported final judgment entry on October 19, 2009. This appeal followed.

{¶ 9} We sua sponte dismissed the appeal for a lack of a final, appealable order because the judgment did not fully specify the amount of all the damages awarded. After the trial court amended its final judgment entry to fully specify the damage award, which resulted in a total judgment of $44,470.58 plus court costs and interest, we reinstated the appeal.

{¶ 10} Ganley raises three assignments of error for our review. Ganley's first assignment of error asserts that the trial court's judgment was erroneously based upon extrinsic evidence in violation of the parol-evidence rule. Ganley's second and third assignments of error challenge the trial court's award of rescission and failure to include any setoff. The Olahs' cross-appeal challenges the adequacy of the trial court's award of attorney fees. We need address only Ganley's first assignment of error because it is dispositive of this appeal.

{¶ 11} Ganley argues that the trial court erred by failing to apply the parol-evidence rule to bar the Olahs' claims. We agree.

{¶ 12} The parol-evidence rule is a rule of substantive law that has application to claims beyond those sounding in contract, including causes of action such as the CSPA. *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio

St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, ¶ 16. The rule[1] provides that " 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.' " Id. at ¶ 12, quoting 11 Williston on Contracts (4th Ed.1999) 569–570, Section 33:4. The rule serves to protect the integrity of written contracts and to ensure the stability, predictability, and enforceability of finalized written instruments. Id. As such, the rule prohibits a party to a final written contract from contradicting or varying the terms thereof with evidence of prior oral representations, understandings, and negotiations. Id. at ¶ 14, 17. Furthermore, " 'testimony introduced in violation of the rule, even in the absence of objection thereto, can be given no legal effect.' " Id. at ¶ 15, quoting *Natl. Sur. Corp. v. Curators of Univ. of Missouri ex rel. Paul Mueller Co.* (C.A.8, 1959), 268 F.2d 525.

{¶ 13} In this case, the trial court erred as a matter of law by considering evidence, in violation of the parol-evidence rule, of representations purportedly made prior to the written purchase contract.

{¶ 14} The Olahs claim that the vehicle was represented to them as new, with the 541 miles being from test drives and dealer use. They further assumed that they were getting a three-year warranty because they thought they were purchasing a new vehicle. Such representations are directly contradicted by the purchase contract, which identifies the vehicle as "used." Therefore, the parol-evidence rule bars consideration of this evidence in regard to the Olahs' claims.

{¶ 15} The Olahs also assert that the representations at issue fraudulently induced them to purchase the vehicle, believing it was new. However, the parol-evidence rule remains applicable in this case. Indeed, the parol-evidence rule may not be avoided when the inducement to sign the writing was a promise that directly contradicts an integrated written agreement. *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 29–30, 734 N.E.2d 782.

{¶ 16} The Olahs nevertheless contend that certain representations were not contradictory to the final agreement and constituted deceptive and unfair acts or practices in violation of R.C. 1345.02(B)(5) and (10); Section 455.3(b), Title 16, C.F.R.; and Ohio Adm.Code 109:4–3–16(B)(3), (5), (22), and (15). We recognize that the trial court never made any specific findings in regard to several of these purported violations. In any event, upon our review, we find no merit to the Olahs' argument.

{¶ 17} The Olahs claim that they were led to believe that the vehicle had a full three-year, 36,000–mile warranty, when the vehicle they purchased had only

---

1. The rule is codified in R.C. 1302.05.

two years remaining on the warranty, in violation of R.C. 1345.02(B)(5) and (10) and Ohio Adm.Code 109:4–3–16(B)(3). However, the Olahs testified that they assumed this was the case because they thought that they were purchasing a new vehicle with a full warranty. Thus, any impression concerning the warranty is inextricably linked to their claim that the vehicle was represented as new. The parol-evidence rule prohibits the use of such evidence in contradiction to the terms of a final written contract.

{¶ 18} Likewise, any representation that the 541 miles on the vehicle were from test drives and dealer use, as related to the representation of the vehicle as new, is contradicted by the terms of the contract. However, the Olahs assert that the failure of Ganley to integrate all material statements into the sales contract was a violation of Ohio Adm.Code 109:4–3–16(B)(22). In *Williams,* the Ohio Supreme Court held that "[t]o the extent that Ohio Adm.Code 109:4–3–16(B)(22) conflicts with the parol evidence rule as codified by R.C. 1302.05 and allows parol evidence contradicting the final written contract, Ohio Adm.Code 109:4–3–16(B)(22) * * * is therefore invalid." 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, ¶ 19.

{¶ 19} The Olahs also claim that Ganley failed to make a brand new 2004 Aveo available for the advertised price of $7,777, in violation of Ohio Adm.Code 109:4–3–16(B)(5). However, the testimony at trial reflects that the advertisement was for a base model Aveo and that the Olahs purchased a vehicle with additional options. There was no evidence of a deceptive or unfair act or practice in this regard.

{¶ 20} The Olahs further claim that Ganley failed to disclose the vehicle's previous use as a "factory official vehicle," in violation of Ohio Adm.Code 109:4–3–16(B)(5). A "factory official vehicle" is defined as "a motor vehicle of the current or previous model year which has been operated by a representative or automotive related subsidiary of the manufacturer/distributor of the vehicle." Ohio Adm.Code 109:4–3–16(A)(9). Pursuant to Ohio Adm.Code 109:4–3–16(B)(15), it is a deceptive and unfair act or practice for a dealer to "[f]ail to disclose * * * the fact that said vehicle has been previously used as a demonstrator, factory official vehicle or rental vehicle. The above disclosure is required when such is known by the dealer."

{¶ 21} Donald Culp, a used-car manager for Ganley, testified that the vehicle was purchased at auction and the "rental" box was checked on the Olahs' purchase contract to put them on notice that the vehicle could have been used as a rental. The auction slip reflects that the vehicle was previously owned by General Motors and used as a company vehicle. However, there is nothing that shows the extent of the vehicle's use or whether it was operated exclusively by

the manufacturer and its representatives. Thus, there was no evidence to establish that the vehicle was in fact a factory-owned vehicle of which the dealer had knowledge.

{¶ 22} Because the Olahs' claims are predicated on evidence of prior representations that are barred by the parol-evidence rule and are otherwise unsupported by the record, we reverse the trial court's final judgment that was rendered in favor of the Olahs and against Ganley, including the attorney-fee award. Ganley's first assignment of error is sustained. The remaining assignments of error and the cross-appeal are moot.

Judgment reversed.

STEWART, J., concurs.

BLACKMON, J., dissents.

PATRICIA ANN BLACKMON, Judge, dissenting.

{¶ 23} I respectfully dissent from the majority opinion. I believe that this is an ideal case to explore what constitutes misrepresentation in a consumer-sales-practice case in light of *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410. The majority opinion concludes that when the sales document shows that the vehicle is "used" and the consumer purchases the vehicle, the conversation regarding fraudulent misrepresentation ends. On the other hand, I believe that the consumer's fraudulent-misrepresentation allegation begins the conversation and our role is to determine whether the quality of the evidence establishes fraud, mistake, or some other invalidating causes. The parol-evidence rule does not apply when the consumer alleges fraudulent misrepresentation, mistake, or some other invalidating causes.

{¶ 24} I admit that I strongly disagree with *Williams v. Spitzer*; however, it is the law. And the law of that case should stand simply for one proposition, which is that the parol-evidence rule applies to consumer-sales-practice-violation cases. I agree that the parol-evidence rule is a powerful knock-out punch. I agree that the writing controls and extrinsic evidence is inadmissible unless fraud, mistake, or some other invalidating cause has not been alleged. Here, the Olahs convinced the trial court that Ganley committed a mistake or a fraud. They came to Ganley with an advertisement to buy a new Aveo for $7,777. They gave the advertisement to the salesperson. They ended up with a "used" Aveo. This used Aveo reduced the warranty to two years as opposed to three years. In order to understand how they changed from a "new" to a "used" car, we must explore the extrinsic evidence. They claimed that they never varied regardless of the written documents.

{¶ 25} The Olahs also contradicted any notion that they had a change of heart. In fact, they believed that they were buying a new car with a three-year, 36,000–mile warranty. The trial court heard this and more. The evidence showed that the salesperson was new and the vehicle was located in the new-car showcase room; it was demonstrated to the Olahs that the car was new. Additionally, Ganley's own Mr. Culp testified that he is the used-car manager and he would have received a commission if a used car had been sold. He did not receive a commission. Thus, the trial court could have concluded that no used car had been sold to the Olahs.

{¶ 26} I believe Ganley intended to sell the 2004 Aveo as new, knowing that, in fact, it was "used." Ganley should not be able to avoid its misrepresentation, mistake, or other invalidating cause by taking cover under the umbrella of the parol-evidence rule and its own document, which it prepared. Ganley controls the document and Ganley never argued or produced evidence that the Olahs, who came for a new car with a three-year, 36,000–mile warranty, somehow changed their minds to a used one with a two-year warranty at a price of $9,400. Finally, the trial court did not believe Ganley that somehow the Olahs got a better deal. They already had a better deal from the advertisement that they had in their hands upon their arrival at Ganley. On that day, the salesperson was new, but not the car.

{¶ 27} Accordingly, when *Williams* is being used to shield an unlawful consumer sales practice, then the salesperson who controls the document should have the consumer initial the box marked "used" or present some evidence that shows that the consumer had a change of heart and decided to buy a "used" vehicle or agreed to a different warranty. Absent the initials of the consumer on or near the used-car description, the consumer should be allowed, in a consumer-sales-practice action, to introduce extrinsic evidence of fraud or mistake.

{¶ 28} Finally, Ganley never rebutted that the Olahs' allegations were wrong or that they agreed to buy a "used" car; accordingly, I would affirm the trial court's ruling.